**AMERICAN FEDERATION OF UNIONS LOCAL 102 HEALTH & WELFARE FUND, et al., Plaintiffs–Appellants,**

v.

**EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, et al., Defendants–Appellees.**

No. 87–3199.

United States Court of Appeals, Fifth Circuit.

April 8, 1988.

George S. King, Emile C. Rolfs, III, Broadhurst, Brook, Mangham & Hardy, Baton Rouge, La., for plaintiffs-appellants.

Michael W. Brody, New York City, Glenn D. Holden, Baton Rouge, La., for defendants-appellees.

* District Judge of the Western District of Louisi-

Before CLARK, Chief Judge, REAVLEY and HUNTER,* Circuit Judges.

CLARK, Chief Judge:

A union, its health and welfare fund, and two plan participants sued an insurance company and its agent for violations of fiduciary duties imposed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* The district court held the agent liable to the fund for health benefit payments made to ineligible persons but not liable for commissions he earned as administrator of the fund, 647 F.Supp. 947. The agent was also held liable to the insurance company for commissions earned on the conversion from term to whole life insurance policies. Because we determine that the agent did not become an ERISA fiduciary until after he was appointed fund administrator, we affirm the finding that he was liable for payments made to inelgible claimants but reverse the finding that he was not liable for commissions earned after he became fund administrator. We affirm the finding that the agent was liable to the insurance company for commissions paid on the life insurance conversion. Finding that the insurance company was not an ERISA fiduciary, we affirm the dismissal of claims against it.

I.

In April 1976, the Equitable Life Assurance Society hired Glen Holden to solicit applications for life and health insurance policies and annuity contracts on a salary plus commission basis. In the summer of 1977, Holden solicited and then issued a group life insurance policy to the American Federation of Unions, Local 102, Health and Welfare Fund (the Fund) providing coverage for term life insurance, dependent life insurance and weekly indemnity benefits. Soon thereafter, Holden issued a policy to the Fund providing group coverage for major medical and dental expenses. Under the terms of the policies, the Fund's

Board of Trustees was responsible for administering the Fund and for providing final review of any denied claims.

In late 1978, Equitable advised the Fund that its health insurance premiums would increase substantially. Equitable and Holden advised the Fund that it could reduce its costs by adopting a self-insured health benefits program. The Fund took this advice, cancelled its group coverage and instituted a self-insured program bolstered by a "stop-loss" major medical policy providing for payment of claims in excess of $25,000.00. After the Fund became self-insured, Equitable owed it over $280,000.00 in claims reserves from the old plan which were due 90 days after the conversion. Equitable didn't refund the reserves until February 1981 after the Fund filed a lawsuit to recover them.

Holden, as Equitable's agent who had sold insurance to the Fund, was aware that the Fund needed someone to administer health benefit claims and proposed that he be selected to act as Fund administrator. The Fund's trustees contracted with "Glen Holden Associates" to become its administrator for the health insurance benefits program. Holden was compensated at a rate of 12% of claims plus administrative expenses. The Fund made out its premium checks to "Glen Holden & Associates." Holden remained an Equitable agent while he was acting as Fund administrator. He apparently concealed this information from the Fund's trustees. Several Equitable employees were aware of Holden's dual role as agent and administrator. However, Equitable's general counsel advised Holden that it was proper to proceed in two capacities, so he did. Holden continued to receive commissions as an Equitable agent on insurance policies sold to others while he was serving as Fund administrator.

While acting as administrator, Holden accepted numerous late health insurance payments and extended coverage to non-covered persons.[1] As a result, the Fund estimates that it suffered a net loss of $190,-296.30 in health payments to non-covered persons and $8,746.00 for additional insurance that it acquired from Equitable for the non-covered persons.

In May 1979, Holden recommended that the Fund replace its $10,000.00 group term life insurance policy with $5,000.00 whole life policies on each of its members. Holden filled out and signed 1350 applications for whole life policies without consulting the individuals who were purportedly covered. The monthly premium on the whole life policies was approximately twice what it had been on the group term policies. Holden received $65,000 in commissions from Equitable for acting as the agent who processed the applications.

By March of 1980, the Fund had become insolvent. The trustees concluded that Holden's actuarily unsound advice had largely caused the problems and terminated Holden as Fund administrator. Soon thereafter, Equitable learned that Holden had forged the signatures on the individual whole life policies and fired Holden from his position as an agent.

The Fund and the union filed suit against Equitable and Holden claiming that they had breached fiduciary duties imposed by ERISA. Lloyd Leger and Harry Breeden, Jr., two Fund participants, were later added as plaintiffs. The Fund sought to recover $277,143.00 transferred from the union's pension fund to the health and welfare fund,[2] $190,296.30 for the health benefit payments made to non-covered persons, $83,000 in commissions and $43,000 in administrative expenses paid to Holden during his tenure as administrator, $8,746 for additional insurance purchased for the non-covered persons, $5,000 in fees paid to an actuary to examine the insolvent Fund, and damages resulting from Equitable's late payment of the $280,000 in claims reserves. Equitable cross-claimed against Holden to recover the $65,000 of commissions it had paid in the switch from term to whole life

---

1. He was apparently acting under the authority of James Boyette, a member of the Fund's Board of Trustees.

2. The Fund added interest and reductions in pension benefits to this sum for an estimated total loss of $377,050.74 on the transfer.

policies. The Fund brought pendent state claims against Holden and Equitable.

The district court found that Holden was an ERISA fiduciary while he was Fund administrator and held him liable for the $190,296.30 in health benefits paid to non-covered claimants. It dismissed all other claims against Holden. The court dismissed all claims against Equitable holding that it was not an ERISA fiduciary. The court granted Equitable's $65,000 cross-claim against Holden. It dismissed the state law claims because they were not properly pled. The Fund appeals. We affirm in part and reverse, and remand in part.

## II.

A) *Holden's Liability*

ERISA imposes a prudent man standard of care upon anyone acting as a fiduciary with respect to an employee welfare benefit plan as defined in the Act.[3] 29 U.S.C. § 1104(a) (1985). A person is considered an ERISA fiduciary if:

"(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

29 U.S.C. § 1002(21)(A) (1985).

Any fiduciary who violates § 1104(a)'s duty to act in the best interests of participants and beneficiaries or engages in prohibited transactions listed in 29 U.S.C. § 1106 (1985) is subject to liability under 29

U.S.C. § 1109(a) (1985). Section 1109(a) provides:

"Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

Section 1109(b) goes on to state that no fiduciary shall be liable for a breach of fiduciary duty that occurred before he became a fiduciary or after he ceased to be a fiduciary.

This court gives the term fiduciary a liberal construction in keeping with the remedial purpose of ERISA. *Donovan v. Mercer*, 747 F.2d 304, 309 (5th Cir.1984). A person is a fiduciary only with respect to those portions of a plan over which he exercises discretionary authority or control. *Sommers Drug Stores Co. Employees Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1459–60 (5th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987).

Using these standards, the district court correctly held that Holden became a fiduciary only after he was appointed administrator of the Fund. Under the terms of the contract making him Fund administrator, Holden was empowered to investigate, process, resolve and pay claims to eligible members of the Fund, to maintain a claims file on members of the Fund, to create a trust in the Fund's account to facilitate disbursements of health benefits,

**3.** The Fund qualifies as an employee welfare benefit fund under 29 U.S.C. § 1002(1) (1985). Section 1002(1) defines employee welfare benefit plan as:

"any plan, fund, or program which ... is ... established or maintained by an employer or by an employee organization ... for the purpose of providing for its participants or their

beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services ..."

and to maintain a check register accounting for disbursements. Holden's authority to grant or deny claims, to manage and disburse fund assets and to maintain claims files clearly qualifies as discretionary control respecting management of a plan or its assets within the meaning of § 1002(21)(A). *See, e.g., Carroll L. Wood, III, D.D.S. v. CNA Insurance Co.,* 837 F.2d 1402, 1403 (5th Cir.1988); *Benvenuto v. Connecticut General Life Ins. Co.,* 643 F.Supp. 87, 90 (D.N.J.1986); *Brock v. Self,* 632 F.Supp. 1509, 1520 (W.D.La.1986); *Eaton v. D'Amato,* 581 F.Supp. 743, 749 (D.D.C.1980). Holden's fiduciary status was not diminished by the trustees' final authority to grant or deny claims and approve investments. The term fiduciary includes those to whom some discretionary authority has been delegated. H.R.Conf.Rep. No. 1280, 93rd Cong., 2d Sess., *reprinted in,* 1974 U.S. Code Cong. & Admin.News 5038, 5103. Hence, the district court properly held Holden liable under § 1109(a) for the $190,-296.30 loss that the Fund sustained while Holden was acting in his discretionary capacity.

█ The district court went on to hold that Holden was not liable for $83,000 in commissions and $43,000 in administrative expenses paid to him by the Fund for his services as Fund administrator. The court stated that while the compensation was excessive and unfair, Holden could not be held liable for it because he was not a fiduciary when he negotiated his compensation contract. The court relied on *Schulist v. Blue Cross of Iowa,* 717 F.2d 1127, 1131 (7th Cir.1983), in which the Seventh Circuit held that a fiduciary was not required to refund excess compensation which it had contracted for through competitive bidding before it exercised discretionary control over the fund. *Schulist,* 717 F.2d at 1131.

We hold that *Schulist* does not control the outcome of this case and that the district court erred in absolving Holden of liability for excess compensation. While Holden may have negotiated his compensation contract in an arm's length transaction before he exercised discretionary authority,[4] his rate of compensation was directly linked to his discretionary activities as Fund administrator. The contract set Holden's compensation rate at 12% of the estimated claims paid, plus administrative expenses. When Holden acted to pay $190,-296.30 to ineligible claimants, his compensation increased with every payment. Because Holden's commissions are based on a percentage of claims paid, and Holden exercised discretion over which claims would be paid, we hold he is a fiduciary with respect to his commissions. *See, F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1259 (2nd Cir.1987); *Sixty–Five Security Plan v. Blue Cross & Blue Shield,* 583 F.Supp. 380, 388 (S.D.N.Y.1984).

However, Holden cannot be held liable for the full amount of his commissions and administrative expenses. Section 1109 provides that a fiduciary is personally liable for profits gained through a breach of his fiduciary duties. Some of his compensation was undoubtedly based on a percentage of legitimate claims paid to persons covered by the policy. This portion of his compensation was not gained through a breach of duty. Holden can only be held liable for the portion of the $126,000 in commissions and administrative expense which were a percentage of the claims paid in breach of his fiduciary duties, that is, the claims paid to non-covered persons. Accordingly, we reverse in part the district court's holding that Holden was not liable to the Fund for commissions and administrative expenses and remand for a calculation of the amount of commissions paid on

**4.** The Fund contends that Holden is a fiduciary with respect to his compensation because the negotiations which led to his appointment as Fund administrator were not arms length. The Fund argues that Holden exercised his influence as the Fund's insurance agent to secure the position as Fund administrator. We find no merit in this argument. The Fund considered several applications for the position of Fund administrator, including one submitted by Equitable. Holden exercised no discretion in the selection of the Fund administrator. Nothing in the record indicates that he exercised undue influence over the selection process or that he was selected for reasons other than his qualifications to serve as Fund administrator.

the $190,296.20 in claims paid to non-covered persons.

■ The district court correctly decided not to impose additional liability for what the Fund calls "Holden's unsound advice to self-insure." The advice was given before Holden assumed his fiduciary duties as Fund administrator. There is no evidence that Holden was paid a fee by the Fund for giving this investment advice. His commissions on this business came from Equitable. Hence, he was not an ERISA fiduciary with respect to the advice under 29 U.S.C. § 1002(21)(A)(ii) (1985). Similarly, Holden cannot be held liable for losses resulting from the transfer of assets from the pension fund to the health and welfare fund because Holden was not a fiduciary with respect to the pension fund.

The record supports the court's finding that no evidence was adduced that the Fund's claim for $8,746.00 in unnecessary premiums paid on the self-insurance plan or any other damages resulted from the delay in payment of reserves by Equitable.

■ Finally, we affirm the district court's finding that Holden is not liable for losses sustained as a result of the conversion from group term to whole life insurance coverage. A judgment of dismissal entered on a settlement agreement between Equitable and the Fund indicates that Equitable reversed the transaction and refunded the premiums paid for whole life coverage. The Fund is only entitled to one recovery for its loss.

**B) *Equitable's Liability***

The Fund seeks to hold Equitable liable for its losses under theories of fiduciary and non-fiduciary liability. The district court absolved Equitable of all liability, holding that it was never more than an insurance carrier with respect to the Fund. We affirm.

■ The Fund argues that Equitable entered a fiduciary relationship with the Fund when it advised the Fund to self-insure. *See, e.g., Eaves v. Penn,* 587 F.2d 453, 458 (10th Cir.1978); *Brock v. Self,* 632 F.Supp. 1509, 1521 (W.D.La.1986); *Brink v. DaLesio,* 496 F.Supp. 1350, 1374 (D.Md. 1980). However, the record does not support a finding that Equitable was an ERISA fiduciary. Equitable had no control over whether the Fund would accept or reject its advice to self-insure. Merely giving advice to self-insure does not make Equitable a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A)(ii) (1985) because the advice was not given on a regular basis pursuant to a mutual agreement for a fee.[5] Simply urging the purchase of its products does not make an insurance company an ERISA fiduciary with respect to those products. *See, e.g., Austin v. General American Life Ins. Co.,* 498 F.Supp. 844, 846 (N.D.Ala.1980); *Cate v. Blue Cross & Blue Shield of Alabama,* 434 F.Supp. 1187, 1190 (E.D.Tenn.1977). Similarly, there is no evidence that Equitable had any discretion to grant or deny benefits, adjudicate

---

5. The Code of Federal Regulations clarifies the term 'investment advice.' 29 C.F.R. § 2510.3–21(c)(ii) (1987) provides that a person renders investment advice when he:

"(B) Renders any advice described in paragraph (c)(1)(i) of this section on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

(2) A person who is a fiduciary with respect to a plan by reason of rendering investment advice (as defined in paragraph (c)(1) of this section) for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or having any authority or responsibility to do so, shall not be deemed to be a fiduciary regarding any assets of the plan with respect to which such person does not have any discretionary authority, discretionary control or discretionary responsibility, does not exercise any authority or control, does not render investment advice (as defined in paragraph (c)(1) of this section) for a fee or other compensation, and does not have any authority or responsibility to render such investment advice ..."

Equitable's suggestion that the Fund self-insure does not fit within this definition.

benefit claims, invest fund assets or administer the Fund.[6]

■ Next, the Fund seeks to establish non-fiduciary respondeat superior liability for Equitable's failure to adequately train and supervise Holden. The doctrine of respondeat superior can be a source of liability in ERISA cases. *Stanton v. Shearson Lehman/American Express, Inc.*, 631 F.Supp. 100, 105 (N.D.Ga.1986). However, the facts do not support imposition of respondeat superior in this case. For respondeat superior liability to attach, the employee must have breached his duty to a third party while acting in the course and scope of his employment. *Sampay v. Morton Salt Co.*, 395 So.2d 326, 328 (La. 1981). It is clear that Holden did not breach his fiduciary duties while acting in the scope of his employment as an Equitable agent. Holden's duties as an Equitable agent were to "solicit applications for life and health insurance policies and annuity contracts." He breached his fiduciary duties to the Fund while he was granting and denying benefit claims and carrying on activities as Fund administrator. These actions were clearly beyond the scope of his duties as an Equitable agent.

Nor is the fact that some Equitable employees knew that Holden was acting both as an agent and as an administrator sufficient to justify the imposition of respondeat superior liability. Equitable never actively and knowingly participated in Holden's breach of duty to the Fund, as is required for a finding of respondeat superior liability. *See, Fink v. National Savings and Trust Co.*, 772 F.2d 951, 958 (D.C.Cir.1985); *Brock v. Gerace*, 635 F.Supp. 563, 569 (D.N.J.1986). At best, Equitable had constructive knowledge that Holden was in a position where a potential conflict of interest could occur. Further, Equitable cannot be held to respondeat superior liability under the theory that it placed Holden in a position where he could defraud the Fund. *See, Home Life Insurance Co. v. Equitable Equipment Co.*, 680 F.2d 1056,

1060 (5th Cir.1982). Holden, under the name "Glen Holden & Associates," contracted individually with the Fund to become Fund administrator. Finally, respondeat superior liability cannot attach for Equitable's failure to properly train and supervise Holden. Liability for the failure to adequately train and supervise an ERISA fiduciary arises where the person exercising supervisory authority was in a position to appoint or remove plan administrators and monitor their activities. *Leigh v. Engle*, 727 F.2d 113, 135 (7th Cir.1984); *Sandoval v. Simmons*, 622 F.Supp. 1174, 1211 (D.C.Ill.1985). Equitable did not choose Holden to be the Fund fiduciary, nor did Equitable undertake to train or supervise Holden for that responsibility. The Fund's trustees were in that position, not Equitable.

■ The district court correctly held that Equitable has no further liability to the Fund for losses sustained during the conversion from term to whole life coverage, or for losses resulting from the delayed return of health insurance reserves. Equitable reversed the transaction converting life insurance coverage from term to whole life, refunded the premium, and eventually returned the health insurance reserves. Although Equitable's latter action was dilatory, it has satisfied its obligations to the Fund.

### C) *Union's Standing*

The Fund contests the district court's ruling that the union did not have standing to sue because it was not a plan participant, beneficiary or fiduciary as required under 29 U.S.C. § 1132(a) (1985). We note that there is a conflict between the Circuits on the issue of union standing. The Second Circuit has held that the list of potential plaintiffs in § 1132(a) is exclusive, *see, Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889, 892 (2d Cir. 1983), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983), while the Ninth

---

**6.** Our finding that Equitable was not a fiduciary precludes a finding of co-fiduciary liability under 29 U.S.C. § 1105(a) (1985).

Circuit has held that parties not listed in § 1132(a), including unions, do have standing to sue. *See, Fentron Industries, Inc. v. National Shopmen Pension Fund,* 674 F.2d 1300, 1304–05 (9th Cir.1982). However, we decline to rule on the issue of the union's standing because three parties with standing, the Fund and two of its participants, were before the court.

### D) *Pendent State Claims*

 The Fund brought state law claims under La.Civ.Code Ann. arts. 2315, 2320 and 2324 (West 1979), which the district court did not consider because they were not stated in the pretrial order or the complaint. Regardless of whether the Fund's state law claims were properly pled, the district court correctly dismissed them. ERISA expressly preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (1985). Congress intended ERISA's preemption provisions to be as broad as possible in order to reserve employee benefit plans for exclusive federal regulation. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). The Fund's state law claims are essentially negligence claims which do not fall within the exceptions enumerated in 29 U.S.C. § 1144(b) (1985).[7] Hence, the district court correctly dismissed all state law claims against Holden and Equitable.

### III.

For the foregoing reasons, the decision of the district court is

AFFIRMED in part, REVERSED in part, and REMANDED.

---

7. 29 U.S.C. § 1144(b) (1985) provides that ERISA does not preempt state laws regulating insurance, banking, securities, or criminal laws or tax laws.