KRAL, INC., d/b/a Ed's Automatic Transmission Service; Ed's Automatic Transmission Service Defined Benefit Plan; Edwin V. Kral; and Calvin Kral

v.

**SOUTHWESTERN LIFE INSURANCE COMPANY.**

Civ. A. No. 4:90–CV–970–Y.

United States District Court,
N.D. Texas,
Fort Worth Division.

Sept. 30, 1992.

Daniel Joe Endres, Rick K. Disney, Douglas, Kressler & Wuester, Fort Worth, Tex., for plaintiffs.

Charles Gene Barnett, William J. Hunter, Southwestern Life Ins. Law Dept., Patrick Frank McManemin, Donna Roberts Morris, McManemin & Smith, P.C., Dallas, Tex., for defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

MEANS, District Judge.

Pending before the Court is Defendant's Motion for Summary Judgment filed on February 21, 1992. After carefully consid-

ering said motion and brief, Plaintiffs' response, Defendant's reply, and all evidence submitted in support thereof, this Court is of the opinion that Defendant's motion is meritorious and should be GRANTED.

This lawsuit arises under the Employee Retirement Income Security Act ("ERISA") wherein Plaintiffs assert a single cause of action for breach of fiduciary duties in violation of 29 U.S.C. § 1109(a) (1985). Plaintiffs include: (1) Ed's Automatic Transmission Service Defined Benefit Plan ("the Kral Plan"), a qualified defined benefit plan under the terms of ERISA; (2) Kral, Inc. d/b/a Ed's Automatic Transmission Service ("Kral, Inc."), the Kral Plan's designated plan administrator; (3) Edwin V. Kral, a Trustee of the Kral Plan and a Kral Plan participant who owed fiduciary duties to the Kral Plan; and (4) Calvin Kral, the Kral Plan's other Trustee and a Kral Plan participant who owed fiduciary duties to the Kral Plan. Defendant is Southwestern Life Insurance Company ("Southwestern"), which is not a designated fiduciary of the Kral Plan and has never been designated by a fiduciary named in the Kral Plan to carry out fiduciary responsibilities.

Plaintiffs contend that Southwestern is nevertheless liable to them for breach of fiduciary duty and for theft of almost $500,000 in pension plan funds by one Joseph Zeigler. Zeigler is the president and sole shareholder of Administrative Pension Services, Inc. ("APS") which, pursuant to contract, acted as the Kral Plan's third-party administrator. Plaintiffs assert the theory of respondeat superior to hold Southwestern liable for Zeigler's allegedly fraudulent conduct.

Pursuant to Fed.R.Civ.P. 56, summary judgment is appropriate if the movant establishes, through the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Defendant's summary judgment evidence consists of Plaintiffs' first amended complaint, responses to Defendant's first request for admissions to Plaintiffs, the affidavits of Ronald E. Archer and J. Thomas Gilbert, copies of the insurance and Southwestern documents, and the complete oral depositions of Robert J. Zeigler and Edwin V. Kral.

The summary judgement evidence clearly shows that there are no genuine issues of material fact for trial. On March 18, 1985, the Kral Plan contracted with Farzaroli & Davey Pension Services Corporation ("Farzaroli") to provide administrative services for the Kral Plan. At that time, Zeigler was an employee of Farzaroli. Sometime in 1985 or 1986, the Kral Plan hired APS as the contract administrator for the Kral Plan and directly compensated APS for the services it rendered. APS is a Texas corporation of which Zeigler is the sole shareholder and president.

On May 1, 1983, Zeigler's wife, Peggy, became an authorized soliciting agent for Southwestern. Peggy Zeigler, however, was only authorized to "solicit applications for life insurance, annuities, and other insurance products offered by [Southwestern] for sale to the general public." Neither Joseph nor Peggy Zeigler was ever an authorized recording agent for Southwestern, and neither ever had the authority to bind Southwestern to an insurance or annuity contract. Moreover, neither of the Zeiglers was authorized to make or modify any contracts or policies on behalf of Southwestern.

Sometime after APS became the Kral Plan's administrator, Plaintiffs solicited and received recommendations from Joseph Zeigler concerning the investment of their retirement funds. In reliance upon Zeigler's advice, Ed Kral, as Trustee, decided to invest Kral Plan funds in guaranteed investment contracts ("GICs") from Southwestern which, according to Zeigler, had the best interest rates. Ed Kral, however, testified at his deposition that he never saw anything in Zeigler's office that identified Zeigler as a Southwestern agent. On April

26, 1986, using forms in his or Peggy Zeigler's possession, Zeigler fabricated a Southwestern Group Annuity Contract which he and Ed Kral executed in the amount of $62,000. Simultaneously, Ed Kral delivered to Zeigler a check drawn upon the Kral Plan in the amount of $62,000 and made payable to APS. Ed Kral made the check payable to APS instead of Southwestern because he assumed that APS was purchasing GICs in "street name" by using the collective funds of a number of APS clients, including Plaintiffs.

Southwestern did not authorize APS to receive funds on behalf of Southwestern, and neither Zeigler nor APS ever forwarded the applications or the funds to Southwestern. Neither has Southwestern ever received any direct payments from or on behalf of Plaintiffs, nor responded to any, application signed by Ed Kral. Rather, Zeigler and APS misappropriated the funds and concealed the theft by using a purloined form to create a phony Southwestern guaranteed investment contract.

On August 11, 1986, Peggy Zeigler appointed her husband as her sub-agent in a "Sub–Agent Acknowledgement." Southwestern approved Peggy Zeigler's appointment. As a Sub–Agent for his wife, Zeigler was not an agent for Southwestern nor was he authorized to act on behalf of Southwestern in any capacity other than the solicitation of applications for insurance to be submitted through Peggy Zeigler. While Zeigler did apply on August 20 to the Texas State Board of Insurance for authorization to solicit for Southwestern applications for legal reserve life, accident and health insurance, Southwestern did not authorize Zeigler or APS to receive funds on its behalf, and it did not educate, train, or authorize Zeigler to give investment advice to qualified retirement plans, including Plaintiffs.

From April 1986 and continuing through 1988, Plaintiffs contributed approximately $400,000 of the Kral Plan funds which were turned over to Zeigler upon his representation that the money would go toward supplementing existing or purchasing new Southwestern GICs. No one denies that Zeigler misappropriated these additional deposits and contributions, all of which were in the form of checks made payable, or endorsed over, to APS. Sometime in 1988, Zeigler told Plaintiffs that the Southwestern GICs he knew to be non-existent had themselves been rolled over into GICs issued by Reserve Life Insurance Company. Plaintiffs neither asked for nor received a copy of the purported Reserve Life GICs. Thus, when Plaintiffs discovered Zeigler's fraud in March 1990, they did not believe that the Kral Plan's funds were still invested in Southwestern GICs. Southwestern did not authorize, affirm, or ratify Zeigler's actions.

Pursuant to a plea bargain agreement filed October 29, 1990, Zeigler plead guilty in Tarrant County Criminal District Court No. 2 to one count of Misapplication of Fiduciary Property of the value of $10,000 or more, a second degree felony, and was thereafter committed to the custody of the Texas Department of Corrections. On May 13, 1991, Plaintiffs obtained a judgment against the Zeiglers in excess of $500,000.

■■■ Plaintiffs' sole basis for recovery against Southwestern is their allegation that Zeigler was acting as Southwestern's agent when he breached his fiduciary duty to Plaintiffs by appropriating the Kral Plan's funds. Because Plaintiffs admit that Southwestern itself was not a fiduciary under ERISA, in order to recover thereunder Plaintiffs must establish Southwestern's vicarious liability under the common law doctrine of respondeat superior. To do so, Plaintiffs must demonstrate that: (1) Zeigler was a fiduciary within the meaning of ERISA as to the Kral Plan; (2) Zeigler breached his fiduciary duty to Plaintiffs while acting in the course and scope of his employment with Southwestern; and (3) Southwestern actively and knowingly participated in Zeigler's breach of fiduciary duty to Plaintiffs. *See Stanton v. Shearson Lehman/Am. Express*, 631 F.Supp. 100, 104–05 (N.D.Ga.1986); *American Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the U.S.*, 841 F.2d 658, 665 (5th Cir.1988).

As to the first element, the parties agree that Zeigler acted as an ERISA fiduciary as to the Kral Plan. This Court finds from the undisputed facts, however, that Plaintiffs cannot satisfy the second and third elements. First, Plaintiffs concede that Southwestern did not know about Zeigler's scheme, much less actively and knowingly participate in its execution and the resulting breach of his fiduciary duty. It is undisputed that Zeigler misappropriated the funds and concealed his crime by fabricating unauthorized GICs and misrepresenting the existence of Kral Plan investment funds in annual summaries of Kral Plan activities. Southwestern did not participate in Zeigler's fraud in any fashion. Plaintiffs had no contact with Southwestern other than through its alleged agency relationship with Zeigler. Southwestern never had authority to grant or deny benefits, adjudicate benefit claims, invest the Kral Plan's assets or administer the Kral Plan's funds. Moreover, Southwestern had no agency relationship with Zeigler when Plaintiffs began relying upon Zeigler for investment advice or when the Kral Plan initially paid APS for the purported purchase of Southwestern GICs. This Court further finds that Zeigler never had authority from Southwestern to give investment advice, issue Southwestern GICs, or receive money on its behalf from APS. Absent active and knowing participation in the breach of fiduciary duties, a non-fiduciary cannot be held liable for the conduct of its agent. *American Federation*, 841 F.2d at 665. The undisputed facts show an absence of knowing and active participation on the part of Southwestern in Zeigler's breach, and Southwestern is accordingly entitled to summary judgment at least pursuant to that element of the *American Federation* test.

In addition, Ed Kral testified that he trusted Zeigler as a "pension plan administrator" and as a person, not because he was purported to be an agent of Southwestern. At all times, Zeigler was acting as president and on behalf of APS. Zeigler's scope of authority, if any, to act for Southwestern was limited to soliciting applications for insurance and annuities. Had Zeigler merely solicited applications for Southwestern GICs, such conduct alone would not have risen to the level of a fiduciary. *See American Federation*, 841 F.2d at 664.

Because Zeigler gave investment advice to Plaintiffs and provided administrative services to the Kral Plan, Zeigler was a fiduciary under ERISA as to Plaintiffs, not Southwestern. Zeigler breached his fiduciary duty by stealing from Kral, not by soliciting applications for Southwestern. Zeigler's giving of investment advice, unauthorized use of Southwestern's GIC documents, and resulting conversion of Plaintiffs' money was clearly beyond the scope of any relationship between Zeigler and Southwestern. Because Zeigler's theft of funds through APS was beyond the scope of his authority as a purported Southwestern agent, Southwestern cannot be held liable for Zeigler's breach of fiduciary duty under respondeat superior.

When the moving party has carried its summary judgment burden, the respondent "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The respondent must produce evidence, not merely argument, in response to a movant's properly-supported motion for summary judgment. *See Foval v. First Nat'l Bank of Commerce*, 841 F.2d 126, 129 (5th Cir.1988); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987). Plaintiffs' rebuttal summary judgment evidence consists of a partial deposition of Robert Zeigler and the affidavit of Edwin Kral. Plaintiffs, however, have not produced any evidence which shows that Zeigler was a fiduciary or even an agent of Southwestern when he defrauded Plaintiffs. Nor did Plaintiffs rebut the evidence demonstrating that, even if Zeigler were an agent of Southwestern, he was acting outside the scope and authority of that relationship. Plaintiffs have failed to produce any evidence that Zeigler was anything more than a sub-agent of Peggy Zeigler authorized only to submit applications and group annuity contracts through her to Southwestern.

Plaintiffs have failed to establish a *prima facie* case of breach of fiduciary duty under ERISA. The undisputed summary judgment evidence clearly shows that Southwestern itself was not a designated fiduciary and that Southwestern did not conduct itself in such a manner that it became a fiduciary under the terms of 29 U.S.C. § 1002(21)(A) (1985). Southwestern did not know about, much less actively and knowingly participate in, Zeigler's theft from Plaintiffs. Zeigler became a fiduciary not by soliciting applications for Southwestern, but by giving investment advice to Plaintiffs, a function for which he was neither trained nor placed in a position to perform by Southwestern. Zeigler breached his fiduciary duties while acting on his own behalf, within the scope of the authority granted to him by APS, or the authority given him by Plaintiffs. This Court finds that summary judgment is appropriate because there are no genuine issues of material fact on any of the three elements of vicarious liability under ERISA.

The Court is, therefore, of the opinion that Defendant's Motion for Partial Summary Judgment should be granted in all respects and that Plaintiff's claims should be DISMISSED WITH PREJUDICE.

SO ORDERED.