LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, a fiduciary as the claims administrator to the Swezey & Newins, Inc. Group Benefits Plan and as subrogated to and assigned the rights of Charles Geisler, Plaintiff,

v.

TOYS "R" US, INC., Toys "R" Us Health Plan, Swezey & Newins, Inc., Charles Geisler and Pamela Geisler, Defendants.

No. 93 CV 3042 (SJ).

United States District Court,
E.D. New York.

Sept. 28, 1995.

Grotta, Glassman & Hoffman, P.A., Roseland, New Jersey by Jedd E. Mendelson, for Plaintiff.

Schulte Roth & Zabel, New York City by Michael S. Feldberg, Glenn E. Butash, for

Defendants, Toys "R" Us, Inc. and Toys "R" Us Health Plan.

Eric J. Weiss, New York City, for Defendants, Charles Geisler and Pamela Geisler.

Pelletrau & Pelletrau, Pathcong, New York by John J. Rowe, III, for Defendant, Swezey & Newins, Inc.

## MEMORANDUM AND ORDER

JOHNSON, District Judge:

### INTRODUCTION

Before this Court is (1) Liberty Life Assurance Company of Boston's ("Liberty Life" or "Plaintiff") motion to amend its Complaint pursuant to Rule 21 of the Federal Rules of Civil Procedure; (2) Charles Geisler and Pamela Geisler's (the "Geislers") motion to join in Plaintiff's motion to amend the Complaint; (3) Defendants Toys "R" Us, Inc. ("Toys") and Toys "R" Us Health Plan's ("Toys Plan") (collectively, the "Toys Defendants") motion to dismiss the Complaint for lack of standing and to dismiss Plaintiff's first, third, fourth and fifth claims for relief for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectively; (4) the Toys Defendants' motion to dismiss the cross claims of the Geislers for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (5) the Toys Defendants' motion for sanctions against the Geislers pursuant to Rule 11 of the Federal Rules of Civil Procedure.

For the reasons discussed herein, Plaintiff's motion to amend its Complaint is granted; the Geislers' motion to join in Plaintiff's motion to amend the Complaint is granted; the Toys Defendants' motion to dismiss the Complaint is granted in part and denied in part; the Toys Defendants' motion to dismiss the cross claims of the Geislers is denied as moot; and the Toys Defendants' motion for sanctions against the Geislers is denied.

### BACKGROUND

This action involves the continuation coverage provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") and the primary and secondary liability of two employee benefit plans. Defendant Charles Geisler was employed by Defendant Toys until his retirement in February 1991. Mr. Geisler, who suffers from chronic myeloid leukemia, received primary medical coverage from the Toys Plan until February 1991.

On or about March 28, 1991, Toys offered Mr. Geisler continuation benefits pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99–272, 100 Stat. 82 ("COBRA") under the Toys Plan. Mr. Geisler elected to continue his medical care under the Toys Plan. He thus paid premiums to the Toys Plan for his COBRA coverage.

In November 1991, Mr. Geisler requested approval from the Toys Plan to undergo an autologous bone marrow transplant at the University of Minnesota Hospital. The Toys Plan approved this treatment for Mr. Geisler on April 16, 1992.

In June 1992, a representative of Mediplan Corporation, Inc. ("Mediplan"), which administers the Toys Plan, contacted Liberty Life regarding Mr. Geisler's health coverage under the plan insured by Liberty Life, the Swezey Plan. Defendant Swezey & Newins, Inc. ("Swezey") is Pamela Geisler's employer and provides its employees and their families with group medical benefits. Mediplan informed Liberty Life that the Toys Plan was not responsible for Mr. Geisler's medical bills incurred after his termination of employment.

On August 7, 1992, the Toys Plan advised Mr. Geisler that he was ineligible for continuation of health benefits under COBRA since he had been covered under the Swezey Plan, his wife's health plan.[1] At that time, Mr. Geisler was hospitalized for a bone marrow procedure.

---

1. The Toys Plan also requested payment of $113.73 from Mr. Geisler, an amount representing the difference between the Toys Plan's payments made on behalf of Mr. Geisler as of February 1991 ($1,969.75) and Mr. Geisler's paid COBRA premiums to date ($1,856.02). (Compl. ¶ 17.)

The Toys Plan subsequently forwarded Mr. Geisler's medical bills to Liberty Life and requested that payment be processed under the Swezey Plan. The bills covered treatment rendered on or about April to June 1992, and equalled approximately $153,000. Additional medical expenses have since been incurred by Mr. Geisler.

In May 1993, Liberty Life paid Mr. Geisler's medical bills on a primary basis preserving its right under the Swezey Plan to recover any amounts paid in excess of its liability as the secondary insurer for Mr. Geisler. On or about September 9, 1993, the Geislers entered into a subrogation/assignment agreement with Liberty Life, under which Mr. Geisler's claims under ERISA were assigned to Liberty Life.

Liberty Life now seeks, *inter alia*, an order from this Court pursuant to § 502(a)(3) of ERISA declaring that it is only secondarily liable for the medical expenses of Mr. Geisler incurred for the 29 months following the date of his retirement. Liberty Life claims that Mr. Geisler's former employer, Toys, should have provided continuation benefits to Mr. Geisler after his termination of employment with Toys pursuant to the COBRA. Accordingly, Liberty Life seeks reimbursement by Toys and/or the Toys Plan pursuant to § 502(a)(1)(B) for benefits paid on behalf of Mr. Geisler during the period March 28, 1991 to January 31, 1993.

Liberty Life also seeks to enforce the coordination of benefits provisions of the Swezey Plan pursuant to § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Finally, Liberty Life asserts a promissory estoppel claim, a violation of COBRA notice rights claim and an equitable subrogation claim against Toys and/or the Toys Plan.

## PROCEDURAL ISSUES

The Complaint in this action was filed on July 8, 1993. The Toys Defendants' motion to dismiss the Complaint was filed on September 9, 1993. On October 15, 1993, Liberty Life filed its Response to the motion to dismiss, as well as a motion to amend the Complaint. On the same date, the Geislers filed a cross motion to withdraw their cross claims and join as Co–Plaintiffs in this action in the filing of an amended complaint. The Toys Defendants then filed a Reply in further support of their motion to dismiss the Complaint on November 3, 1993. This Reply also supported their motion to dismiss the cross claims of the Geislers. Plaintiff's Surreply and numerous correspondences were filed with this Court thereafter.

In order to avoid further delay in the resolution of this action, and because the Complaint and the proposed Amended Complaint are substantially identical for purposes of the COBRA allegations, this Court treats the motion to dismiss the Complaint as a motion to dismiss the Amended Complaint.[2] This facilitates resolution of this action without affecting the substantive outcome of the issues.

## DISCUSSION

I. *Plaintiff's Motion to Amend its Complaint*

██ Courts are generally liberal in granting leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Courts, however, do have discretion to deny such leave "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990); *see, e.g., Tokio Marine & Fire Insurance Co. v. Employers Insurance of Wausau*, 786 F.2d 101, 103 (2d Cir.1986). The plaintiff bears the burden of demonstrating why such leave should be granted in the face of an overly long delay. *See Cresswell*, 922 F.2d at 72; *Sanders v. Thrall Car Mfg. Co.*, 582 F.Supp. 945, 952 (S.D.N.Y.1983).

██ Liberty Life seeks to realign the Rule 19 Defendants (the Geislers) as Co–Plaintiffs

---

**2.** For the reasons stated herein, the Court grants Plaintiff's motion to amend the Complaint, and accepts for filing the proposed Amended Complaint.

560

in this action.[3] Liberty Life also seeks to "add several factual allegations relating to events that occurred since the filing of the Complaint, in particular, that Charles and Pamela Geisler have executed an assignment and subrogation agreement with Liberty Life." Pl.'s Mem.Supp.Mot. Amend at 1. Finally, Liberty Life seeks leave to incorporate the cross claims of the Geislers as additional claims.

Because this Court finds that no party will be prejudiced by granting leave to amend the Complaint in this action, and because the interests of justice so require, this Court grants Plaintiff's motion to amend its Complaint. To prevent further delay in the adjudication of this matter, this Court accepts for filing the proposed Amended Complaint.

II. *The Geislers' Cross Motion to Join in Plaintiff's Motion to Amend the Complaint*

■ The Geislers seek an Order to withdraw their Answer and Cross Claims and join with Liberty Life as Co–Plaintiffs in the filing of an Amended Complaint. In the alternative, the Geislers seek an enlargement of time in which to respond to the Toys Defendants' motions to dismiss the Complaint, to dismiss the Answer and Cross Claims of the Geislers, and to impose Rule 11 sanctions.

The Geislers seek to join as Co–Plaintiffs in this action in order to, *inter alia,* preserve Mr. Geisler's claim for primary benefits from the Toys Plan. Because this Court has granted Plaintiff's motion to amend the Complaint, and because the joining of the Geislers as Co–Plaintiffs in this action is in the interests of justice, this Court hereby grants this cross motion.

III. *Defendants Toys and the Toys Plan's Motion to Dismiss*

■ A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Green v. Maraio,* 722 F.2d 1013, 1015–16 (2d Cir.1983) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). The court must accept as true all material facts well-pleaded in the Complaint and must make all reasonable inferences in the light most favorable to the plaintiff. *In re Energy Sys. Equip. Leasing Sec. Litig.,* 642 F.Supp. 718, 723 (E.D.N.Y. 1986).

A. Standing

Liberty Life asserts that this Court has federal question jurisdiction over this action under both § 502(a) of ERISA and the federal question statute, 28 U.S.C. § 1331. The Toys Defendants argue that Liberty Life lacks standing to pursue its claims against them because Liberty Life is not a "participant, beneficiary or fiduciary" of the Toys Plan, a prerequisite to filing an action brought under § 502(a) of ERISA. Specifically, the Toys Defendants assert that neither Liberty Life's status as a claims administrator of the Swezey Plan nor its status as subrogee or assignee of Mr. Geisler's rights under the Toys Plan confer standing on Liberty Life for purposes of § 502(a) of ERISA. The Toys Defendants also argue that 28 U.S.C. § 1331 does not provide a basis for standing to bring this action. This Court finds that federal jurisdiction in this action can be predicated on § 502(a) of ERISA and does not address whether 28 U.S.C. § 1331 properly supports jurisdiction in this action.

1. *Liberty Life as Claims Administrator of the Swezey Plan*

■ Section 502(a)(3) of ERISA permits "a participant, beneficiary, or fiduciary" to bring an action:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest ...
Fed.R.Civ.Pro. 19(a).

---

**3.** Swezey and the Geislers were made Defendants in this action pursuant to Rule 19 of the Federal Rules of Civil Procedure, which provides, in relevant part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if

(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3). Section 502(e)(1) of ERISA confers exclusive jurisdiction on federal courts to hear these actions. 29 U.S.C. § 1132(e)(1).

Thus, the inquiry here is the scope of the group of plaintiffs who are entitled to bring suit under § 502(a) of ERISA. The Second Circuit has adopted a narrow reading of the statute, determining that the list of permissible plaintiffs under § 502 is exclusive. *Chemung Canal Trust Co. v. Sovran Bank/Maryland,* 939 F.2d 12, 14 (2d Cir.1991), *cert. denied,* 505 U.S. 1212, 112 S.Ct. 3014, 120 L.Ed.2d 887 (1992); *Tuvia Convalescent Center, Inc. v. National Union of Hosp. & Health Care Employees,* 717 F.2d 726, 730 (2d Cir.1983) (finding that employer lacked standing to assert claim under § 502 of ERISA); *Pressroom Unions–Printers League Income Sec. Fund v. Continental Assur. Co.,* 700 F.2d 889, 892 (2d Cir.) (holding that employee benefit plan lacked standing to bring suit under § 502 of ERISA), *cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983).

In the instant action, Liberty Life alleges that as the claims administrator of the Swezey Plan, it "has discretion and authority to determine the payment of benefits" of the Swezey Plan, and that accordingly, it is a fiduciary of the Swezey Plan.[4] (Compl. ¶ 6; Am.Compl. ¶ 7.) As such, Liberty Life argues that it has standing under ERISA to enforce the coordination of benefits provisions of the Swezey Plan against the Toys Plan.

The Toys Defendants argue that Liberty Life is essentially seeking to enforce the terms of the Toys Plan, not the Swezey Plan. They argue further that jurisdiction under ERISA cannot be founded on Liberty Life's status as a fiduciary of a plan unrelated to that whose terms it seeks to enforce. In support of this proposition, the Toys Defendants point to the Third Circuit's holding in *Northeast Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 154 (3d Cir. 1985) (holding that plaintiffs lacked standing to sue under § 502(a)(3) of ERISA because they were fiduciaries of an unrelated plan).

Under the Toys Defendants' characterization of this action, Liberty Life is a fiduciary of the wrong plan. It is trying to circumvent its lack of standing to enforce the Toys Plan by disguising its claim as one seeking to enforce its own plan. This Court is not persuaded that the Toys Defendants' characterization of this action is the only plausible characterization. The Swezey Plan does contain coordination of benefits provisions, the enforcement of which is contingent on the enforcement of the Toys Plan. The fact that the Toys Plan's COBRA provisions must be honored in order to implement the Swezey Plan's coordination of benefits provisions is of no consequence to Liberty Life's standing to pursue this action. The coordination of benefits provisions of the Swezey Plan would be rendered meaningless if the Toys Plan's COBRA provisions were not enforced. *See Winstead v. J.C. Penney Co.,* 933 F.2d 576, 579 (7th Cir.1991) (ERISA § 502(a)(3) permits fiduciaries to bring suit against other plan to resolve disputes regarding overlapping coverage).

Moreover, under this Court's view, Congress did not contemplate that there be a fiduciary relationship between the fiduciary bringing the suit and the plan being sued in all cases brought under § 502(a)(3) of ERISA. At its core, the instant action is an action to interpret the provisions of two employee benefit plans, both of which are covered by ERISA. Resolution of the underlying issues affects the interests and welfare of beneficiaries, as well as the interests of employee benefit plans. These are precisely the interests that fall within ERISA's vast preemptive scope. *See* 29 U.S.C. § 1144(a); *see, e.g., FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 408, 112 L.Ed.2d 356 (1990)

4. This Court is satisfied that Liberty Life was a fiduciary of the Swezey Plan for the relevant time period and not, as the Toys Defendants assert, a former fiduciary of that plan. *See* Defs.' Mem. Supp.Mot. Dismiss Compl. at 13 n. 11.

(noting ERISA's broad preemptive scope). Thus, to deny Liberty Life standing to pursue this action under ERISA would seem to run afoul of Congressional intent to regulate comprehensively employee benefit plans. Accordingly, this Court finds that Liberty Life may sue under § 502(a)(3) of ERISA to enforce the terms of the Swezey Plan's coordination of benefits provisions.

### 2. *Liberty Life as Subrogee/Assignee of Mr. Geisler*

■ The Toys Defendants argue that Liberty Life lacks standing to pursue its claims as an assignee or subrogee because "[t]he Swezey Plan's subrogation provision ... does not make Liberty a 'participant' or 'beneficiary' of the Toys Plan for purposes of section 502." Defs.' Mem.Supp.Mot. Dismiss Compl. at 15. This Court agrees.

The subrogation provision contained in the Swezey Plan gives Liberty Life the right to recover any amount it pays in excess of what is required under the Swezey Plan:

> When Liberty has made payments for allowable expense[s] which total, at any time, more than what is needed at the time to carry out COB [the plan's coordination of benefits provision], Liberty has the right to:
>
> —recover the excess from anyone to or for whom such payments were made or from any other organization; or
>
> —deduct the excess from any benefits which become due under This Plan.

Compl.Ex.F at 26. This provision, then, does not alter Liberty Life's legal status with respect to Mr. Geisler; it simply provides that Liberty Life has a right to recover any payments made in excess of what is required under the Swezey Plan's coordination of benefits provision. Thus, this provision does not confer to Liberty Life derivative standing to sue as the assignee or subrogee of Mr. Geisler.

Subsequent to the filing of the Complaint, on or about September 9, 1993, the Geislers entered into a Subrogation/Assignment Agreement with Liberty Life. This agreement, however, runs afoul of the explicit anti-assignment language contained in the Toys Plan:

> Except as applicable law may otherwise require, no amount payable at any time hereunder shall be subject in any manner to alienation by anticipation, sale, transfer, assignment, bankruptcy, pledge, attachment, charge or encumbrance of any kinds [sic]; any attempt to alienate, sell, transfer, assign, pledge, attach, charge or otherwise encumber any such amount, whether presently or hereafter payable shall be void.

Corrigan Aff. ¶ 2. As such, Liberty Life cannot be considered a valid assignee of the rights and claims of the Geislers for purposes of this action.

Finally, even if this Court found that Mr. Geisler "assigned" to Liberty Life his rights and claims as a participant in the Toys Plan, it is not clear that such a designation would pass jurisdictional muster under the Second Circuit's literal construction of § 502(a) of ERISA. *See Northeast Dep't,* 764 F.2d at 154; *Allstate Insurance Co. v. The 65 Security Plan,* 879 F.2d 90, 94 (3d Cir.1989); *Health Scan, Ltd. v. Travelers Ins. Co.,* 725 F.Supp. 268, 269–70 (E.D.Pa.1989).[5] Having found that no valid assignment was made in this case, this Court need not reach this issue here.

### 3. *"Arising Under" Jurisdiction*

Liberty Life contends that 28 U.S.C. § 1331 provides an alternative jurisdictional basis to bring this action. The Toys Defendants argue that because Liberty Life cannot bring this action under § 502 of ERISA, Liberty Life's claims do not arise under federal law. Because this Court has already found that Liberty Life is a fiduciary within the meaning of § 502(a)(3) of ERISA, this

---

5. Other circuit courts have supported the notion that valid assignments allow assignees to "stand in the shoes" of their assignors, and thus confer standing to bring actions under ERISA. *See, e.g., Misic v. Building Service Employees Health and Welfare Trust,* 789 F.2d 1374 (9th Cir.1986) (health care provider had standing to sue plan as assignee of plan participant; ERISA's anti-alienation clause not applicable to health benefits); *Kennedy v. Connecticut General Life Ins. Co.,* 924 F.2d 698, 700–01 (7th Cir.1991) (health care provider could sue group health insurer for nonpayment of claim as assignee of plan participant).

Court declines to consider this alternative basis for jurisdiction.

### 4. *The Addition of Charles Geisler as Co–Plaintiff*

Finally, citing the court's decision in *American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S.*, 841 F.2d 658, 665–66 (5th Cir.1988), Liberty Life argues that the addition of Charles Geisler, a participant of the Toys Plan, as Co–Plaintiff in this action establishes standing for Liberty Life.

Because this Court finds that the instant action is expressly authorized by § 502(a)(3) of ERISA, this Court does not address this proposed basis for federal jurisdiction. For the reasons stated above, the Toys Defendants' motion to dismiss the Complaint for lack of standing pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is denied.

### B. COBRA

█ In a separate ground for dismissal of the Complaint, the Toys Defendants assert that Liberty Life's interpretation of COBRA is wrong. The Toys Defendants base their claim for dismissal on the language of § 602(2)(D)(i) of ERISA, which provides, in relevant part, that coverage under the statute:

> must extend for at least the period beginning on the date of the qualifying event and ending not earlier than ... [t]he date on which the qualified beneficiary first becomes, after the date of the election ... covered under any other group health plan (as an employee or otherwise) which does not contain any exclusion or limitation with respect to any preexisting condition of such beneficiary....

29 U.S.C. § 1162(2)(D)(i). According to the Toys Defendants, Mr. Geisler was never entitled to elect COBRA continuation coverage because he was already covered under his wife's plan on the date he elected COBRA coverage. The Toys Defendants argue that

this reading of COBRA is consistent with the underlying purpose of the statute—the maintenance of group health care coverage following an employee's termination of employment.

The inquiry here is whether § 602(2)(D) requires dual coverage where alternate group health coverage preexists the qualifying event. Since the Second Circuit has not squarely addressed this issue, this Court will look to other circuits for guidance.

In *Oakley v. City of Longmont*, 890 F.2d 1128 (10th Cir.1989), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990), the court held that a person with double coverage at the time of the qualifying event is permitted to make a COBRA election in one plan while retaining coverage under the other plan when there is a significant "gap" in the coverage between the two plans.[6] *Id.* at 1132. The court further held that the COBRA coverage could be terminated only if subsequent coverage was acquired as a result of new employment, reemployment or remarriage. *Id.* Thus, the *Oakley* court interpreted the phrase "first becomes, after the date of the election covered under" to mean that the person acquires other coverage after the date of the election. This interpretation of COBRA was also embraced by the court in *King v. John Hancock Mutual Life Insurance Co.*, 500 N.W.2d 619 (S.D.1993) (holding that Medicare eligibility prior to the qualifying event does not bar an employee from COBRA coverage).

The "order of coverage" theory adopted in *Oakley*, however, was expressly rejected by the Eleventh Circuit in *National Companies Health Benefit Plan v. St. Joseph's Hospital of Atlanta, Inc.*, 929 F.2d 1558 (11th Cir. 1991). In that case, the plaintiff elected COBRA continuation coverage even though he was already covered by his wife's plan. The plaintiff argued that the coverage termination provision of § 602(2)(D) applied only if the plaintiff acquired new insurance. The court found that "an ERISA provider is not

---

**6.** Congress subsequently codified the *Oakley* decision in its amendment of § 602(2)(D) such that a qualified beneficiary may elect COBRA coverage, notwithstanding other insurance coverage, when there is a gap between the two coverages.

*See* Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 7862(c)(3)(B)(ii), 103 Stat. 2106, 2432 (amending ERISA § 602(2)(D)(i)).

required to offer continuation coverage to an employee or his dependents who are covered under a preexisting group health plan." *Id.* at 1566.

The *National Companies* court, however, did adopt the "gap" theory of the *Oakley* and *Brock v. Primedica, Inc.,* 904 F.2d 295, 297 (5th Cir.1990) (holding that plaintiff was not entitled to elect continuation coverage under COBRA because she was already covered under her husband's plan) cases. The *National Companies* court held that if there had been a significant gap in coverage, then the plaintiff would not truly be covered under another plan. 929 F.2d at 1571.

While this Court is persuaded by the "gap" theory articulated by the *Oakley* court, it cannot accept the notion that employees are to be treated differently under COBRA based on the timing of the acquisition of other group health coverage. As the *National Companies* court observed, "it is immaterial when the employee acquires other group health coverage; the only relevant question is when, after the election date, does that other coverage take effect." *Id.* at 1570.

Moreover, as mentioned earlier in this decision, Congress has codified the "gap" theory in its amendment to § 602(2)(D) of ERISA. Thus, resolution of the instant action turns on whether the Swezey Plan contains "any exclusion or limitation with respect to any pre-existing condition" of Mr. Geisler. *See* Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 7862(c)(3)(B)(ii), 103 Stat. 2106, 2432.

■ The "gap" in coverage alleged by Liberty Life, however, is not the type of gap or limitation in coverage contemplated by Congress. Liberty Life argues that § 602(1) of ERISA requires the Toys Plan, which permits its plan participants to have dual coverage, to permit identical dual coverage to participants who are paying for continued coverage pursuant to COBRA. Pl.'s Mem. Opp'n Mot. Dismiss Compl. at 25. This reading of § 602(1) of ERISA is incorrect. Section 602(1) of ERISA requires that continuation coverage "consist of coverage which ... is identical to the coverage provided under the plan to similarly situated beneficiaries under the plan with respect to whom a qualifying event has not occurred." 29 U.S.C. § 1162(1). Thus, a plan sponsor must provide identical coverage to similarly situated beneficiaries under the plan; the plan cannot discriminate against employees who have suffered a qualifying event.

■ Moreover, Liberty Life has not alleged that Mr. Geisler suffers from a preexisting condition that is not covered by the Swezey Plan. Instead, Liberty Life alleges that "Mr. Geisler's annual out of pocket expenses limitation appears to be lower under the Toys Plan than under the Swezey Plan." (Am.Comp. ¶ 3.) The mere fact that the Swezey Plan is less generous than the Toys Plan does not constitute a limitation on coverage of the preexisting condition for purposes of the COBRA continuation provisions. *See Haney v. Pennsylvania Treasurer's Office,* 1992 WL 209265, *2 (E.D.Pa.1992) (finding that benefits offered under "any other health plan" need not be equal to or greater than the benefits offered pursuant to COBRA continuation coverage). Nor does the difference in coverage between dual coverage and coverage under the Swezey Plan alone constitute an exclusion or limitation within the meaning of the amendment to § 602(2)(D).

While this Court is not unmindful of the hardships that some beneficiaries may suffer in the transition from continuation coverage under an employer plan to coverage under another health plan, there is no provision in ERISA that requires identical coverage between such plans.

Because Liberty Life's first, third, fourth and fifth grounds for relief are premised on its erroneous interpretation of COBRA, these claims cannot survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, Defendants' motion to dismiss is granted with respect to these claims but denied with respect to the promissory estoppel and breach of contract claims.[7]

7. The breach of contract claim is the Sixth Cause of Action of the Amended Complaint.

## IV. *The Toys Defendants' Motion to Dismiss the Cross Claims of the Geislers*

This Court has already granted the Geislers' motion to withdraw their cross claims and to join as Co–Plaintiffs in this action. Accordingly, the Toys Defendants' motion to dismiss these cross claims is denied as moot.

## V. *Defendants Toys and the Toys Plan's Motion for Sanctions against the Geislers*

■ The Toys Defendants seek sanctions against the Geislers pursuant to Rule 11 of the Federal Rules of Civil Procedure because of the legal insufficiency of each of the Geislers' cross claims.

This Court finds, however, that sanctions against the Geislers are not warranted in this action. What apparently inspired the Geislers' cross claims against the Toys Defendants was uncertainty about the outcome of the action, the desire to preserve any claims they have against the Toys Defendants, and the desire to insulate themselves from further litigation concerning this liability dispute.

Since this Court sees no evidence that the filing of the cross claims violates Rule 11(b), this Court denies the Toys Defendants' motion for sanctions against the Geislers.

### CONCLUSION

For the foregoing reasons, (1) Plaintiff's motion to amend its Complaint is GRANTED; (2) the Geislers' cross motion to join in Plaintiff's motion to amend its Complaint is GRANTED; (3) the Toys Defendants' motion to dismiss the Complaint is GRANTED in part and DENIED in part; (4) the Toys Defendants' motion to dismiss the cross claims of the Geislers is DENIED as moot; and (5) the Toys Defendants' motion for sanctions against the Geislers is DENIED.

SO ORDERED.