**EAST TEXAS MACK SALES, INC., et al., Plaintiffs-Appellants,**

v.

**NORTHWEST ACCEPTANCE CORP., et al., Defendants-Appellees.**

No. 86–2575.

United States Court of Appeals, Fifth Circuit.

June 15, 1987.

Charles H. Clark, Tyler, Tex., for plaintiffs-appellants.

J. Patrick Kelley, Tyler, Tex., for defendants-appellees.

Before WISDOM, WILLIAMS and HILL, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellants East Texas Mack Sales, Inc., R.S. Martin, Jr., and Martin Gas Sales, Inc. are appealing the judgment of the district court ordering them to pay appellee Northwest Acceptance Corp. the full amount outstanding on two promissory notes held by appellee, plus attorneys' fees and expenses. Because we determine that the district court lacked diversity jurisdiction to decide the case, we reverse and remand this suit for trial in state court.

## I. *Facts*

East Texas Mack Sales, Inc. (ETMS), a Texas corporation located near Longview, Texas, is engaged in the business of selling new and used Mack trucks, truck parts, and service on those vehicles. R.S. Martin, Jr. is the owner and chairman of the board of Martin Gas Sales, Inc., the principal owner of ETMS. Northwest Acceptance Corp. (NWAC) is a sales financing company, and Duane Paulson was the NWAC sales representative responsible for soliciting business from ETMS at the time these events transpired. The dispute between the parties arose as a result of a sale of certain heavy equipment and the attendant financing of the transaction.

ETMS began doing business with NWAC in 1980. One of the first financing arrangements that NWAC put together for ETMS involved the purchase of two dump-trailer rigs by Pruitt Contractors, Inc. (Pruitt), a regular customer of ETMS. On June 9, 1981, Pruitt executed a promissory note in the amount of $256,349.66. This note and ETMS's security interest in the two rigs were set forth in Loan Security Agreement # 106 (LSA # 106). Martin, as the principal owner, personally guaranteed to ETMS that Pruitt would make the payments called for by LSA # 106. This instrument, also dated June 9, 1981, was designated as the Guarantee of Loan Security Agreement # 106.

On that same day, ETMS and NWAC entered into a full recourse agreement, designated as the Assignment of Loan Security Agreement # 106, whereby ETMS assigned to NWAC its interest in LSA # 106 and guaranteed payment of all the installments due under the agreement. Using a form generally known as a "UCC–1," NWAC then filed a financing statement covering the equipment sold to Pruitt under LSA # 106 with the Texas Secretary of State on June 12, 1981.

Pruitt returned to ETMS in September 1981 to purchase four new Mack trucks. He was unable, however, to make the cash down payment which ETMS ordinarily required. Paulson, as NWAC's sales representative, then devised a financing arrange-

ment that allowed Pruitt to purchase the four trucks without having to make the required down payment. Pruitt agreed to furnish additional collateral instead of cash in order to provide ETMS with a secure equity position.

On October 13, 1981, ETMS sold the four Mack trucks to Pruitt. Pruitt then executed a promissory note for $427,619.74 and transferred to ETMS a security interest in the four trucks and fifteen pieces of additional equipment as collateral. This transaction was set out and described in Loan Security Agreement #173 (LSA #173). Also on October 13, 1981, ETMS and NWAC entered into an Assignment of Loan Security Agreement #173 which obligated ETMS to guarantee to NWAC all payments due under LSA #173.

ETMS did not know that on the day before it sold the trucks to Pruitt, Paulson, acting on NWAC's behalf, had entered into a financing arrangement with Pruitt under which Pruitt borrowed $576,812.15 from NWAC and, in return, transferred to it a security interest in the same fifteen pieces of equipment in which ETMS would take a security interest on the following day. The transaction between Pruitt and NWAC was set out in Loan Security Agreement #172 (LSA #172).

On October 14, 1981, NWAC filed a UCC–1 financing statement for LSA #172, and on October 16, 1981, it filed a UCC–1 financing statement for LSA #173. The timing of the filings vested NWAC with the superior lien in the fifteen pieces of equipment over the lien held by ETMS.

Subsequently, Pruitt began falling behind on the installments due under LSA #106 and LSA #173. As a result, Pruitt, NWAC, and ETMS jointly entered into a modification of the financing and security documents. This temporary relief proved to be ineffective, and Pruitt filed a Chapter 11 bankruptcy in the United States District Court. During the bankruptcy proceedings, appellant ETMS learned of its secondary lien position in the collateral put up as security for LSA #173. ETMS foreclosed on the four Mack trucks, but was unable to foreclose on any of the additional items of collateral to reduce the debt owed to it by Pruitt. Then, when NWAC demanded that the various appellants satisfy their guarantee obligations for the balance remaining on LSA #106 and LSA #173, appellants countered by bringing this suit.

The suit was brought by appellants ETMS, Martin, and Martin Gas Sales, Inc. against NWAC and Duane Paulson in state district court. Appellants alleged that Paulson, acting as an employee, representative, and agent of NWAC, had fraudulently induced them to enter into the modification agreement concerning the underlying loan security agreements. They sought money damages and a judgment declaring them not liable to NWAC for payment of LSA #106 and LSA #173. NWAC counterclaimed for the balance due on the loan agreements.

NWAC removed the action to the United States District Court for the Eastern District of Texas. In its petition for removal, NWAC alleged that plaintiffs were all Texas residents and that it was an Oregon corporation with its principal place of business in Portland. It admitted that co-defendant Paulson was a Texas resident but claimed that Paulson was not a necessary or proper party to the suit and that he had been named as a defendant solely to destroy federal court diversity jurisdiction. NWAC also moved to dismiss Paulson from the case.

Appellants moved to remand the case to state court. Almost a year later, the district court entered an order denying appellants' motion to remand and granting NWAC's motion to dismiss Paulson. The district court held that Paulson's joinder was fraudulent because appellants' complaint did not state a cause of action against Paulson under Texas law.

Trial to the court was held, and final judgment was entered against appellants on June 30, 1986. Appellants filed a timely notice of appeal.

## II. *Diversity Jurisdiction*

Appellants contend that the district court was in error in determining that Paulson

had been fraudulently joined in this action in order to defeat federal jurisdiction. It is their position that they alleged a legitimate cause of action against Paulson under Texas law and that the case should have been remanded to state court due to incomplete diversity among the parties. We agree with appellants' assertion. The parties before the district court lacked the complete diversity of citizenship needed to give the court jurisdiction to hear this dispute. The case must be remanded to state court for further proceedings.

*B., Inc. v. Miller Brewing Co.,* 663 F.2d 545 (5th Cir.1981) set out the standard to be applied in cases where fraudulent joinder has been alleged. We stated that "[i]n order to establish that an in-state defendant has been fraudulently joined, the removing party must show ... that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Id.* at 549 (emphasis in original). *B., Inc.* also clearly described the procedures a district court should follow in deciding the issue of fraudulent joinder:

> The district court must then evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff. Moreover, the district court must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff.
>
> If, having assumed all of the facts set forth by the plaintiff to be true and having resolved all uncertainties as to state substantive law against the defendants, the district court should find that there is no possibility of a valid cause of action being set forth against the in-state defendant(s), only then can it be said that there has been a "fraudulent joinder." However, if there is even a possibility that a state court would find a cause of

action stated against any one of the named in-state defendants on the facts alleged by the plaintiff, then the federal court must find that the in-state defendant(s) have been properly joined, that there is incomplete diversity, and that the case must be remanded to the state courts.

*Id.* at 549–50 (citations omitted).

Appellants' original state court petition alleged a cause of action for common law fraud against NWAC and its agent and employee, Duane Paulson.[1] The district court determined that appellants failed to state a cause of action against Paulson under the Texas law of agency since "[i]f an agent acting within the scope of his authority enters into a contract for his principal, the principal rather than the agent is liable." *Medical Personnel Pool of Dallas, Inc. v. Seale,* 554 S.W.2d 211, 213 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). Appellants, however, do not dispute that the district court relied upon a well-recognized concept of agency law. They contend instead that their cause of action against Paulson sounded in tort, not contract, and that a different rule of law is applicable. This contention is correct. Texas law clearly provides for a cause of action against an agent individually for making fraudulent statements which induced another party to contract with the principal.

"The rule in Texas has always been that an agent is personally liable for his own torts." *Light v. Wilson,* 663 S.W.2d 813, 815 (Tex.1983) (Spears, J., concurring). Additionally, "where an agent commits a tort while acting within the scope of his employment as the agent of another, he will be personally liable in damages, even though his principal is also liable under the doctrine of *respondeat superior*." *Leonard Duckworth, Inc. v. Michael L. Field & Co.,*

---

1. Appellants also filed an amended petition alleging additional facts supporting their claim that Paulson fraudulently induced them to enter into the loan agreement assignments and guarantee contracts. Appellee erroneously claims that the allegations contained in the amended petition are of no force and effect because they were filed in state court after removal. The Court in *B., Inc.* indicated that it would be proper for a district court to consider facts contained in a pleading not technically before the court. 663 F.2d at 552 n. 17. In any event, the original pleading upon which removal was based was adequate to raise the common law fraud claim against Paulson.

516 F.2d 952, 958 (5th Cir.1975); *see also Leyendecker & Associates, Inc. v. Wechter,* 683 S.W.2d 369 (Tex.1984); *Barclay v. Johnson,* 686 S.W.2d 334 (Tex.App.—Houston [1st Dist.] 1985, no writ); *Cameron v. Terrell & Garrett, Inc.,* 599 S.W.2d 680 (Tex.Civ.App.—Fort Worth 1980) rev'd on other grounds, 618 S.W.2d 535 (Tex.1981).

Appellee's attempts to distinguish these cases does not persuade. *Cameron,* for example, is particularly on point. Although the case involved a statutory cause of action under the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. § 17.41 *et seq.* (Supp.1980), the court specifically found that common law rules relating to agent and principal were to be applied. The court went on to state:

> Although an agent is generally not liable for contracts made by him for the benefit of his principal, the agent can be held personally liable to a third person for damages arising out of intentional deceit in procuring such contracts under certain circumstances. In cases where liability attaches, the principal is liable both in contract and in tort. The agent, however, is liable only in tort.

599 S.W.2d at 682 (citations omitted).

Appellants unquestionably pled sufficient facts to state a cause of action against Paulson. Therefore, the district court erred in denying appellants' motion to remand and in granting appellee's motion to dismiss Paulson. The judgment of the district court, lacking a jurisdictional foundation, cannot stand.

REVERSED. THE CASE IS TO BE REMANDED TO THE STATE COURT FOR FURTHER PROCEEDINGS.