**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 92-9049

KRAL, INC., d/b/a
Ed's Automatic Transmission
Service, ET AL.,

Plaintiffs-Appellants,

VERSUS

SOUTHWESTERN LIFE INSURANCE COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
For the Northern District of Texas

(August 16, 1993)

Before EMILIO M. GARZA, DeMOSS, Circuit Judges, and ZAGEL, District Judge.[*]

DeMOSS, Circuit Judge:

I.

This is an appeal of a summary judgment granted in favor of Southwestern Life Insurance Co. (SWL). Kral sued SWL for breach of fiduciary duties in violation of 29 U.S.C., § 1109 (a) (1985).

Plaintiffs include: (1) Ed's Automatic Transmission Service Defined Benefit Plan, a qualified defined benefit plan under the

---

[*] District Judge of the Northern District of Illinois, sitting by designation.

terms of ERISA (the Kral Plan); (2) Kral, Inc. d/b/a Ed's Automatic Transmission Service (Kral, Inc.), the Kral Plan's designated plan administrator; (3) Edwin V. Kral, a Trustee of the Kral Plan and a Plan participant who owed fiduciary duties to the Kral Plan; and (4) Calvin Kral, the Kral Plan's other Trustee and a Kral Plan participant who owed fiduciary duties to the Kral Plan. The defendant is SWL, which is not a designated fiduciary of the Kral Plan and has never been designated by a fiduciary named in the Kral Plan to carry out fiduciary responsibilities.

Plaintiffs contend that SWL is liable to them for breach of fiduciary duty and for theft of almost $500,000 in pension plan funds by Robert Joseph Zeigler (Zeigler). Zeigler is the president and sole shareholder of Administrative Pension Services, Inc. (APS) which, pursuant to contract acted as the Kral Plan's third-party administrator. Plaintiffs assert the theory of respondeat superior to hold SWL liable for Zeigler's allegedly fraudulent conduct.

On May 1, 1983, Zeigler's wife, Peggy became an authorized soliciting agent for SWL. Apparently Peggy Zeigler was only authorized to "solicit applications for life insurance, annuities, and other insurance products offered by [Southwestern] for sale to the general public." Neither Joseph nor Peggy Zeigler was ever an authorized recording agent for SWL, and neither ever had the authority to bind SWL to an insurance or annuity contract. Moreover, neither of the Zeigler's was authorized to make or modify any contracts or policies on behalf of SWL.

2

On March 18, 1985, the Kral Plan contracted with Farzaroli & Davey Pension Services Corporation (Farzaroli), to provide it with administrative services. At the time, Joseph Zeigler was an employee of Farzaroli.

In 1985 or 1986, the Kral Plan hired APS as their contract administrator. APS was directly compensated for the services it rendered. Zeigler was the president and sole shareholder of APS. Plaintiffs solicited and received recommendations from Zeigler concerning investment of their retirement funds. On April 26, 1986, Zeigler used forged SWL Annuity Contracts which he and Ed Kral executed for $62,000. Simultaneously, Zeigler received a check for $62,000 from the Kral Plan which he instructed Kral to make payable to APS. SWL did not authorize APS to receive funds on its behalf. Neither Zeigler nor APS ever forwarded the contracts or funds to SWL.

On August 11, 1986, Peggy Zeigler appointed her husband as her sub-agent, for SWL. SWL approved of Zeigler's appointment only for the solicitation of applications for insurance to be submitted through Peggy Zeigler.

From April 1986 to 1988, Plaintiffs contributed approximately $400,000 of the Kral Plan funds on the representation of Zeigler that the money would go toward purchasing GIC's from SWL. Each time that plaintiffs sought to purchase GIC's from SWL, Zeigler had plaintiff fill out an SWL application form. All checks were made payable to APS at Zeigler's request.

3

On October 29, 1990, Zeigler plead guilty to one count of misapplication of fiduciary property of the value of $10,000 or more, a second degree felony in Texas State court, pursuant to a plea bargain agreement. On May 13, 1991, the Plaintiffs obtained in the United States Bankruptcy Court for the Northern District of Texas a judgment against Peggy and Zeigler for $500,000. Kral also filed this suit against SWL to enforce rights under an employee benefit plan on December 14, 1990 in the United States District Court for the Northern District of Texas.

On Feb 21, 1992, SWL filed a motion for summary judgment. The District Court found that there were no genuine issues of material fact on any of the three elements of vicarious liability under ERISA and granted SWL's motion. On appeal, plaintiffs allege that the district court erred in awarding defendant SWL summary judgment on the grounds that SWL was not vicariously liable for Zeigler's breach of fiduciary duty.

We AFFIRM.

## II.

Because plaintiffs admit that SWL itself was not a fiduciary under ERISA, in order to recover from SWL, they must establish SWL's vicarious liability under the common law doctrine of respondeat superior. American Federation of Unions v. Equitable Life Assur. Soc., 841 F.2d 658, 665 (5th Cir. 1988). The district court, however, awarded a summary judgment in favor of SWL that there was no vicarious liability. Therefore, in order to set aside this summary judgment on appeal, the plaintiffs must show that a

4

genuine fact issue exists as to each of the following three common law elements of vicarious liability:

1.  Zeigler was a fiduciary within the meaning of ERISA as to the Kral Plan;

2.  Zeigler breached his fiduciary duty to plaintiffs while acting in the course and scope of his employment with SWL; and

3.  SWL actively and knowingly participated in Zeigler's breach of fiduciary duty to plaintiffs.

American Federation, 841 F.2d 658, 665 (5th Cir. 1988).

The district court found that several facts are undisputed:

1.  Zeigler defrauded plaintiffs out of over $450,000;

2.  Zeigler is to be considered a fiduciary under ERISA;

3.  Zeigler applied to the Texas State Board of Insured for authorization to solicit for applications for SWL and was licensed by the State of Texas to be SWL's agent; and

4.  SWL never received any of the funds plaintiffs gave Zeigler for the purpose of buying GIC's, issued by SWL.

Clearly, the first element that Zeigler is a fiduciary under ERISA as to the Kral Plan is met under the undisputed facts.  The issues on appeal are whether plaintiffs have presented fact issues on the second and third elements of vicarious liability.  For the reasons herein stated, we find that the plaintiffs failed to raise the requisite fact issues on the second and third elements.

**III.**
Did Zeigler Breach His Fiduciary Duty While Acting In The Course And Scope Of His SWL Agency?

Plaintiffs must demonstrate that Zeigler was acting within the scope of his authority as an SWL agent when he breached his fiduciary duties.  The district court held that the plaintiffs did not produce any evidence showing that Zeigler was an agent of SWL

5

when he breached the fiduciary duties to the plaintiffs, and that plaintiffs did not rebut SWL's assertion that when the breach occurred, Zeigler was acting outside the scope and authority of his agency relationship with SWL.

Plaintiffs argue that they raised a fact issue that Zeigler acted within the scope of his SWL agency by claiming that SWL clothed him with apparent authority to sell the GIC's and collect money.

Apparent authority is present when a principal clothes its agent with the semblance of authority such that a reasonably prudent person having knowledge of the business involved would be justified in believing that the agent has the power the person assumes that he has. Migerobe, Inc. v. Certina USA, Inc., 924 F.2d 1330, 1336 (5th Cir. 1991). Plaintiffs contend that Zeigler was SWL's licensed agent during the time he executed the fraudulent scheme (in fact he was Peggy's sub-agent). Plaintiffs argue that SWL clothed Zeigler with apparent authority when it provided him with blank policy and application forms with SWL's name on them, thereby putting him in a position to defraud plaintiffs. Plaintiffs point out that the SWL application forms informed the customer that "[i]f for any reason Southwestern does not accept this Application, Southwestern shall return all amounts received with interest within five business days of the date of receipt in Southwestern's Home Office." In support of their argument, plaintiffs cite Weyant v. Acceptance Ins. Co, 917 F.2d 209, 214

6

(5th Cir. 1990).[1]  Plaintiffs argue that Zeigler was also authorized by his SWL licensing contract to receive money from customers, and that a reasonable person would be justified in concluding that SWL had accepted the application for GIC's when the money was not returned.[2]

However, we find the circumstances of this case easily distinguishable from those in Weyant.  At the time Zeigler began giving investment advice to plaintiffs, his wife, Peggy had not appointed him as an SWL sub-agent nor was he licensed as an SWL agent.  The scope of Zeigler's express authority, once given, was limited to soliciting applications for insurance and annuities through his wife.  Under Texas law, a soliciting agent has no authority to contract on behalf of the insurer.  International Security Life Ins. Co. v. Finck, 496 S.W.2d 544 (Tex. 1973).  Zeigler directed the plaintiffs to make their checks out to APS not SWL.  This direction is inconsistent with a claim of apparent

---

[1] The court in that case found that Southwestern Surplus Insurance Company's agent, a surplus agent of Acceptance Insurance Company, had apparent authority to retract a cancellation of one of Acceptance's polices because:
> . . . Acceptance supplied Southwestern with blank policy forms and extended authority to them to receive and accept proposals for insurance; to effect, issue, countersign and deliver policies authorized by Acceptance; and to collect and receive premiums on behalf of Acceptance.  Most importantly, the agency agreement between Acceptance and Southwestern explicitly provided that Southwestern had discretion in determining when to cancel a policy.

Id. at 214.

[2] This argument does not make sense in light of the fact that all checks were made out to APS at Zeigler's instruction.

authority to sell GIC's on behalf of SWL. The plaintiffs never required that APS, Zeigler's corporation, produce a receipt showing that the investments had been in fact purchased in the APS "street name." Additionally, all of Zeigler's actions were through APS, which had contracted to provide the Plan with investment advice; and not through SWL. It was Zeigler's role as president of APS which gave him the ability to carry out his fraudulent scheme, not his position as soliciting agent of SWL. The Fifth Circuit in American Federation, 841 F.2d at 665 held that absent active and knowing participation in the breach of fiduciary duties, a non-fiduciary cannot be held liable for the conduct of its agent.

In order to succeed on the theory that Zeigler had apparent authority beyond that of a soliciting agent, plaintiffs must show that they were "induced to act in good faith upon certain representations" made by SWL, not Zeigler. See, Wells Fargo Business Credit v. Ben Kozloff,Inc. 695 F.2d 940, 945, reh'g denied, 699 F.2d 1163 (5th Cir.), cert. denied, 464 U.S. 818 (1983).[3] The only evidence linking Zeigler with SWL is his possession and use of SWL forms.

There is no evidence in the record that demonstrates that SWL purposely sent the blank forms to Zeigler or that SWL knew that Zeigler had gained access to them. The deposition testimony of Zeigler was that SWL sent Zeigler's wife, Peggy, who was its general agent, a pack of materials that included rate books and

---

[3] Moreover, authority is not created by the mere statements of the purported agent. Custom Leasing, Inc. v. Texas Bank and Trust Co. of Dallas, 516 S.W.2d 138, 144 (Tex. 1974).

cards and sample blank forms. This same testimony further indicated that the blank forms were sent as an "example" and not for the purpose of selling GIC's to potential customers. Furthermore, the record reflects that the purported GIC's provided to Plaintiffs by Zeigler were never signed or authorized by SWL.

After a thorough review of the record, this court affirms the district court's conclusion that the summary judgment evidence merely shows that Zeigler was a soliciting agent who had not been clothed with authority to give investment advice or sell GIC's for SWL. Likewise, we find that no genuine issue of fact has been raised that would establish that SWL actively and knowingly participated in Zeigler's breach of his fiduciary duty. Therefore, plaintiffs have failed to establish genuine issues of fact on the necessary elements of vicarious liability.

We AFFIRM.