**Kimberly Ann SCHRUM, As Next Friend of Justin Patrick Kelly, Plaintiff,**

**v.**

**George LAND, Kathleen Anderson, Texas State Teachers Association, and David Wade, Individually and As Superintendent of the Elwood Nebraska Public School District, Defendants.**

No. Civ.A. H–96–3054.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 21, 1997.

Russell "Rusty" Hardin, Jr, Rusty Hardin and Associates, Houston, TX, for Plaintiff.

Lisa Ann Brown, Bracewell and Patterson, Houston, TX, Nicholas J. Lanza, Bush and McAffrey, Houston, TX, Charles Vance Christopher, Crain, Caton & James, Houston, TX, for Defendants.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

Pending before the Court are Defendant Texas State Teachers Association's ("TSTA") Motion for Summary Judgment [Doc. # 22] ("TSTA's Motion") and Defendants George Land and Kathleen Anderson's Motion for Summary Judgment [Doc. # 61] ("Land/Anderson Motion"). Plaintiff Kimberley Schrum ("Schrum" or "Plaintiff"), as next friend of Justin Kelly ("Kelly"), has responded in opposition. *See* Response to Texas State Teachers Association's Motion for Summary Judgment [Doc. # 44] ("Response to TSTA's Motion"); Plaintiff's Response to George Land and Kathleen Anderson's Motion for Summary Judgment [Doc. # 66] ("Response to Land/Anderson Motion"). The Court has considered the motions, responses, reply, *see* Texas State Teachers Association's Reply to Plaintiff's Response to Motion for Summary Judgment [Doc. # 47] ("TSTA's Reply"), all other matters of record in this case, and the relevant authorities. For the reasons stated below, TSTA's Motion is **GRANTED,** and the claims against Land and Anderson individually are **REMANDED** to state court.

## I. *FACTUAL BACKGROUND*

This dispute centers around events at the La Porte Junior High School (the "school") during Fall 1994, and the actions of several teachers at the school. Plaintiff alleges that Kelly was the victim of sexual misconduct by a teacher (not a party to this case). Plaintiff claims that the Defendants harmed Kelly through their alleged conduct in support of the accused teacher.

### A. *Underlying Events*

During Fall 1994, Kelly was subjected to harassment and sexual misconduct by his homeroom teacher and junior high football coach, Michael Kluck ("Kluck"). Kluck's behavior included inappropriate touching, sexually suggestive comments, requests for sexual gratification, and harassing phone calls. *See* Plaintiff's First Amended Complaint [Doc. # 17] ("Complaint"), at 3–5. Kelly informed his family of Kluck's behavior during Thanksgiving holidays, and a criminal investigation ensued. *See* Complaint, at 5. Apparently, another student and classmate of Kelly's also reported sexual misconduct by Kluck to law enforcement. *See id.*

Law enforcement continued the investigation, building a strong case against Kluck. He resigned in approximately April 1995. *See* Affidavit of Gerald Haschke (Exhibit 3 to TSTA's Motion) ("Haschke Affidavit"), at 1. Ultimately, Kluck pleaded guilty to the charge of criminal indecency with a child. *See* Complaint, at 6.

### B. *Alleged Conduct of Defendants Land and Anderson*

According to Plaintiff, Defendants George Land ("Land") and Kathleen Anderson ("Anderson"), also teachers at the school, "slandered [Kelly] repeatedly to teachers at La Porte Junior High School and to [Kelly's] fellow students," in an effort to protect and defend Kluck, calling Kelly "a liar, drug user, and a gang member, and openly question[ing] and comment[ing] on the character and stability of his family." Complaint, at 5.

Specifically, Plaintiff alleges that Land and Anderson advised other teachers to write letters on behalf of Kluck only mentioning his positive qualities, and to garner negative comments about Kelly. *See id.* at 5–6. Plaintiff claims that on or about February 1, 1995, Land and Anderson held a teachers meeting at the school, calling for fellow teachers to "band together" in support of Kluck. *See id.* at 6. Further, Plaintiff maintains that during that meeting, Land and Anderson called Kelly an illegal drug user and a gang member, and also claimed that Kelly had recanted his testimony and had lied to law enforcement authorities about Kluck's sexual abuse. *See id.* at 7. Plaintiff insists that these statements were lies. *See id.* at 6.

Plaintiff also contends that on or about February 2, 1995, Land made an announcement in the teacher's lounge that Kelly and the other child victim had "recanted" and that the district attorney's office would not present the case to the grand jury. At that time, Plaintiff maintains that Land also informed teachers that he had heard that Kelly's mother, Schrum, had been married several times, and that Kelly's family was "so messed up" that her current and former husbands were working at the same chemical plant. *See id.* at 6. As a result of the alleged conduct of Land and Anderson, Plaintiff was "completely and thoroughly humiliated." *Id.*

Finally, Plaintiff also alleges that Land and Anderson questioned Kelly's teachers about his academic record, including his academic and disciplinary record, and shared this information with others including his peers, "with no concern for [Kelly's] right to be free from the public disclosure of private facts." *Id.* at 10–11.

### C. *Anderson's Association with Defendant TSTA*

During the relevant time period, Anderson was a teacher at the school and a member of the La Porte Educator's Association ("LPEA"), the local association of TSTA, which is a teachers' union. *See* Deposition of Gerald Haschke (Exhibit 2 to Response to TSTA's Motion) ("Haschke Deposition"), at 17. The LPEA and TSTA are separate, but related, entities. *See* Affidavit of Brad Ritter, Director of Field Services for TSTA (Exhibit 5 to TSTA's Motion) ("Ritter Affida-

vit"), at 1. Anderson was an Association Representative ("AR") at the school for TSTA during the 1994–95 school year. The AR is the contact person on each campus for the local association—the "front line member advocate," according to TSTA's AR Manual. *See* AR Manual, A Handbook for the Association Representative, Texas State Teachers Association/National Education Association (Exhibit 3 to Response to TSTA's Motion) ("AR Manual"), at 4. .

Anderson became acquainted with Kluck as a result of her TSTA activities, and later became his friend. *See* Deposition of Kathleen Anderson (Exhibit 1 to Response to TSTA's Motion) ("Anderson Deposition"), at 214. She apparently visited with Kluck on numerous occasions during the 1994–95 school year, between the time he was suspended from teaching and the time he pleaded guilty to criminal indecency with a child. *See id.* at 52, 144, 144–47.

When Kluck realized the severity of the accusations against him, he contacted LaBeth Pondish ("Pondish"), the grievance chairperson for LPEA. The grievance chairperson assists members when they are involved in controversies with their employers. Pondish referred Kluck to Gerald Haschke, the TSTA "UniServ" representative, and TSTA employee. Haschke then directed Muck to a private criminal defense attorney, Robert Fickman ("Fickman").[1] *See* Haschke Affidavit, at 1; Haschke Deposition (Exhibit 3 to TSTA's Reply), at 210. Fickman requested that Anderson write a letter of support on behalf of Kluck, which she did. *See* Anderson Deposition, at 54–55, 58, 243–44. Apparently also at his request, Anderson called together a meeting of teachers in her classroom and asked them to write additional letters of support. *See* Anderson Deposition, at 59, 62. Anderson testified that she "felt like she was working for TSTA" when she did these things; she also felt that she had the encouragement (if not necessarily the authority) of TSTA to make statements in support of Kluck. *See* Anderson Deposition, at 249. According to Plaintiff, Haschke never told Anderson that TSTA was *not* involved in collecting statements to support Kluck, nor did he correct her misimpression that Fickman was representing TSTA in defending Kluck, soliciting letters of support for him, and seeking disparaging comments about Kelly. *See* Haschke Deposition, at 226, 228, 230–31.

### D. *Procedural Summary*

Schrum filed this lawsuit in the District Court of Harris County, Texas, on August 14, 1996. The lawsuit was originally filed against La Porte I.S.D., TSTA, Anderson, and Land. On September 13, 1996, the Defendants filed a Notice of Removal based on federal question jurisdiction over Plaintiff's claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (1994). *See* Notice of Removal [Doc. # 1], at 1. On February 10, 1997, Plaintiff filed a Notice of Nonsuit [Doc. # 15] as to Defendant LaPorte I.S.D. Plaintiff then amended her complaint, dropping the Title IX claim originally alleged against LaPorte I.S.D., and adding as a party David Wade ("Wade"), individually and as superintendent of the Elwood, Nebraska, Independent School District. *See generally* Complaint; *id.* at 3. Plaintiff's claims against Wade, however, were subsequently dismissed for lack of personal jurisdiction. *See* Memorandum and Order Granting Wade's Motion to Dismiss [Doc. # 49].

On March 28, 1997, TSTA filed its Motion for Summary Judgment, based upon the argument that Anderson was not acting as a TSTA agent when she allegedly committed the acts in question, and that therefore TSTA could not be vicariously liable for her alleged torts. *See* TSTA's Motion. Pursuant to agreed extensions, Plaintiff filed her Response on behalf of Kelly on July 23, 1997. *See* Response to TSTA's Motion. On October 17, 1997, Defendants Land and Anderson filed their Motion for Summary Judgment based upon qualified immunity, the "duty to disclose" doctrine, free speech, and a defect in Plaintiff's invasion of privacy claim. *See*

---

1. Anderson states that she assumed that Fickman was a TSTA employee. *See* Anderson Deposition, at 177, 244.

Land/Anderson Motion. Plaintiff responded to this motion on November 3, 1997. *See* Response to Land/Anderson Motion.

## II. *SUMMARY JUDGMENT STANDARD*

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Boze v. Branstetter*, 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *See Boze*, 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.1995).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. For any matter on which the nonmovant carries the burden of proof at trial, however, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the nonmovant's case, shift to the nonmovant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact so as to warrant a trial. *See Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden on summary judgment may not be satisfied by conclusory allegations, unsubstantiated assertions, meta-

physical doubt as to the facts, or a scintilla of evidence. *See Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 459 (5th Cir.1995), *revised on other grounds*, 79 F.3d 1415 (5th Cir.1996) (en banc); *Little*, 37 F.3d at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands*, 66 F.3d at 92; *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *See Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

## III. *DISCUSSION*

### A. *Claims Against Defendant TSTA*

Plaintiff claims that "[t]he actions of ... Anderson were taken as an agent of Defendant Texas State Teachers Association while acting in the course and scope of her agency," and that TSTA is therefore liable for Kelly's damages under agency principles. Complaint, at 8–9. Defendant counters that Anderson was not acting as an agent of TSTA at any time relevant to this lawsuit. *See* TSTA's Motion, at 5.

#### 1. *Texas Agency Law*

"Agency is a legal relationship created by an express or implied agreement or by operation of law whereby the agent is authorized to act for the principal, subject to the principal's control." *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1296 (5th Cir. 1994). To prove an agency relationship under Texas law, there must be evidence from which the court could conclude that the alleged principal had the right to control both the means and the details of the process by which the alleged agent was to accomplish the task. *See id.; In re Carolin Paxson Advertising, Inc.*, 938 F.2d 595, 598 (5th Cir.1991); *United States v. Contemporary Health Management*, 807 F.Supp. 47, 49

(E.D.Tex.1992) ("Under Texas agency law, the essential element is the 'right of control' of the purported agent by the purported principal.") (citations omitted). An agent cannot confer authority upon itself. *See Cactus Pipe & Supply Co. v. M/V Montmartre,* 756 F.2d 1103, 1111 (5th Cir.1985) (citations omitted). Nor is authority created by mere statements of a purported agent. *See Kral, Inc. v. Southwestern Life Ins. Co.,* 999 F.2d 101, 104 n. 3 (5th Cir.1993). "[E]ven if a person acts for or accommodates another, if the accommodating person is not under the other person's control, an agency relationship does not exist." *Walker v. Federal Kemper Life Assurance Co.,* 828 S.W.2d 442, 452 (Tex.App.—San Antonio 1992, writ denied).

■ "An agent's authority to act for its principal may be demonstrated in any one of three ways: express actual authority, implied actual authority, or apparent authority." *Toonen v. United Services Auto. Ass'n,* 935 S.W.2d 937, 941 (Tex.App.—Houston [14th Dist.] 1996, no writ). An agent has only as much authority as its principal either expressly or impliedly confers. The extent of this authority is determined in light of all surrounding circumstances, including the parties' relations to one another, the parties' undertakings, and the general usages and practices of others engaged in such undertakings. *See Karl Rove,* 39 F.3d at 1297.

■ A principal is liable for its agent's acts when the agent has actual or apparent authority to commit those acts, or when the principal ratifies them. *See Spring Garden 79U, Inc. v. Stewart Title Co.,* 874 S.W.2d 945, 948 (Tex.App.—Houston [1 Dist.] 1994, no writ). In determining the principal's vicarious liability, the proper question is not whether the principal authorized the specific wrongful act, but whether the agent was acting within the *scope* of the agency at the

time of committing the act. *See Celtic Life Ins. Co. v. Coats,* 885 S.W.2d 96, 99 (Tex. 1994) (emphasis added). This is a question of fact unless the agent's authority (or lack thereof) is clearly established. *See Geders v. Aircraft Engine and Accessory Co.,* 599 S.W.2d 646, 650 (Tex.Civ.App.—Dallas 1980).[2]

### 2. *Analysis*

Defendant moves for summary judgment based on the argument that Anderson was not a TSTA agent while committing the acts in question, and that therefore those allegedly tortious acts were committed solely as an individual, rather than within the scope of her duties and responsibilities as an AR. *See generally* TSTA's Motion. Plaintiff counters that at a minimum, she has raised fact issues regarding whether Anderson was acting within the scope of an agency relationship as an AR during the time that she worked to organize teachers at the school to "band together" in support of Kluck. *See* Response to TSTA's Motion, at 1–2. She argues that "the AR is Johnny–On–The–Spot for TSTA and has the express, implied, and apparent authority to speak for TSTA on virtually any and all teacher-related issues that TSTA might be interested or involved in, including grievance complaints or accusation[s] against any LPEA/TSTA member." *See* Response to TSTA's Motion, at 17.

### a. *Actual Authority*

Under Texas law, actual authority includes both express and implied authority. *See Pasant v. Jackson Nat'l Life Ins. Co.,* 52 F.3d 94, 97 (5th Cir.1995). Plaintiff has failed to raise a fact question on either of these theories contradicting strong proof that Anderson lacked both express and implied authority to

---

**2.** When an agent exceeds her authority under the agency agreement, she becomes personally liable. *See Arzehgar v. Dixon,* 150 F.R.D. 92, 94 (S.D.Tex.1993); *Hartford Cas. Ins. Co. v. Walker County Agency, Inc.,* 808 S.W.2d 681, 687 (Tex. App.—Corpus Christi 1991, no writ). " 'The rule in Texas has always been that an agent is personally liable for his own torts.' " *East Texas Mack Sales v. Northwest Acceptance Corp.,* 819 F.2d 116, 119 (5th Cir.1987) (quoting *Light v. Wilson,* 663 S.W.2d 813, 815 (Tex.1983) (Spears, J., con-

curring)). Although an agent acting within the scope of his or her authority is not individually liable for a cause of action sounding in contract, " 'where an agent commits a tort while acting within the scope of his employment as the agent of another, he will be personally liable in damages, even though his principal is also liable under the doctrine of *respondeat superior.*' " *Id.* (quoting *Leonard Duckworth, Inc. v. Michael L. Field & Co.,* 516 F.2d 952, 958 (5th Cir.1975)).

act for TSTA in relation to Kluck's defense or criminal investigation-related matters.

*Express Authority.*—"Express authority" exists when the principal has made it clear that he or she desires that the act under scrutiny be done. *See Pasant,* 52 F.3d at 97. TSTA argues that "[a]s a matter of law, as shown by the affidavits submitted with TSTA's Motion for Summary Judgment, neither TSTA nor LPEA ever expressly authorized Ms. Anderson to do *any* of the acts of which she is accused." TSTA's Motion, at 12. To the contrary, Plaintiff argues that "[t]he evidence in this case clearly demonstrates that ... Anderson is an actual, express agent of TSTA who was acting within the general scope of her agency duties at the time of these events." *See* Response to TSTA's Motion, at 7.

Neither Plaintiff nor Anderson has set forth any summary judgment proof showing that any TSTA employee or agent *expressly* authorized Anderson's scrutinized actions in any way. Anderson recalled talking to Haschke about Kluck's case and its progress, and thought she told him that Fickman had asked her to write letters on behalf of Kluck. *See* Anderson Deposition (Exhibit 1 to Plaintiff's Response to TSTA's Motion), at 156, 159. She stated that in her mind, Haschke was directing her and guiding her in her role in TSTA and LPEA. *See id.* at 223. The evidence is uncontroverted, however, that

Haschke never requested that Anderson engage in the conduct alleged in this lawsuit. *See* Haschke Affidavit, at 2. Haschke testified that his involvement in Kluck's criminal case only involved Kluck's departure from the school, and that he never authorized Anderson to act as an agent for TSTA regarding her alleged conduct in this case. *See* Haschke Affidavit, at 1–2.[3]

Plaintiff does not dispute the absence of an express TSTA directive to engage in the allegedly offending conduct; she instead argues that Kluck's criminal defense attorney, Fickman, was a "TSTA" attorney, and that *he* authorized Anderson's actions on behalf of TSTA. *See* Response to TSTA's Motion, at 10. According to Anderson, she would not have done these things had the "TSTA lawyer" not told her to do so. *See* Anderson Deposition, at 271. Anderson admitted, however, that she "assumed" that Fickman was a TSTA attorney, *see id.* at 177, 179–80, 272, despite her own testimony that Fickman told Anderson expressly that he was Kluck's attorney. *See* Anderson Deposition (Exhibit 1 to TSTA's Reply), at 172. Thus, all summary judgment proof of record indicates that Fickman is an independent attorney. *See* Haschke Affidavit, at 1 ("I immediately referred Mr. Kluck to a private criminal defense attorney."); Haschke Deposition, at 210 (Exhibit 3 to TSTA's Reply).[4]

---

**3.** Haschke stated that there was "never a plan of action taken by TSTA to defend Kluck. Since the district did not decide to take action against Kluck until the spring, and then Kluck agreed to resign, there was never anything for me to prepare. After I took over the employment case, no one from LPEA had any authority to represent Kluck in any manner." *See* Haschke Affidavit, at 2.

**4.** When asked whether Fickman represented to her that he had TSTA's authority to solicit her actions, Anderson replied, "[h]e just talked to me like [Kluck's] lawyer. He didn't talk to me about anything like who told him to do what." Anderson Deposition, at 176 (Exhibit 1 to TSTA's Reply). Further, Anderson does not recall Fickman himself—or any TSTA employee—telling her that Fickman was a TSTA attorney. *See id.* at 174, 177. As Defendant points out, TSTA provides liability insurance coverage for its members, and the insurance also provides reimbursement for attorney's fees in the event a member is accused of a criminal act, employs a criminal

defense attorney, and is exonerated or the charges are dropped. *See* AR Manual, at 8; Deposition of Brad Ritter, Director of Field Services for TSTA (Exhibit 4 to Defendant's Reply) ("Ritter Deposition"), at 36–38. The AR Manual does not say that an attorney referred to a member's case will be a "TSTA employee." *See* AR Manual, at 7–8.

Moreover, Texas agency law requires that principals have a right of control over their agents, *see Karl Rove,* 39 F.3d at 1296, and the Texas Disciplinary Rules of Professional Conduct state that "[a] lawyer shall not permit a person who recommends ... the lawyer to render legal services for another to *direct or regulate* the lawyer's professional judgment in rendering such legal services." TEX DISCIPLINARY R. PROF. CONDUCT 5.04(c) (1989), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Supp.1997) (STATE BAR RULES art. X, § 9) (emphasis added). Thus, "[t]o argue as the [P]laintiff has done, that an independent attorney who represents members of a professional organization is by that act an agent of the organization, is to turn the lawyer's ethical

Anderson consistently has taken the position that she was always acting as an agent for TSTA and was in the course and scope of her duties as an official TSTA AR when she acted as an "advocate" for Kluck.[5] *See* Anderson Deposition (Exhibit 1 to Response to TSTA's Motion), at 134, 211–12, 249, 272. This position lacks factual and legal support. An agent cannot confer authority on herself. *See Cactus Pipe,* 756 F.2d at 1111. Nor is authority created by mere statements of a purported agent. *See Kral,* 999 F.2d at 104 n. 3. Anderson's reported assumption that Fickman was a TSTA lawyer—plainly contradicted by summary judgment evidence—does not raise a material fact issue as to whether Fickman was a TSTA agent authorizing her to engage in the alleged misconduct.[6] Her mistaken beliefs are legally insufficient to raise a genuine fact question regarding whether TSTA *expressly autho-* *rized* the specific behavior that is the subject of this suit.

Notwithstanding the lack of express authority to engage in the complained-of acts, Anderson apparently was authorized by TSTA more generally to engage in activities relating to membership recruiting. *See generally* Response to TSTA's Motion, at 7–21; TSTA's Reply, at 11. The AR Manual instructs ARs that they are the "front line" member advocates. In this capacity, the Manual instructs ARs to hold themselves out as TSTA representatives to school teachers, *see* AR Manual, at 4, 6, 20, 23; to recruit new members, *see id.* at 4; to provide "ongoing dissemination of information concerning the programs and accomplishments" of TSTA, *see id.* at 4; and to "provide assistance to present members." [7] *Id.* at 4. It thus is undisputed that Anderson was authorized by TSTA to engage in those activities related to recruiting and to retaining TSTA members.[8]

---

obligations and state law on their collective heads." TSTA's Reply, at 8.

5. When asked whether she had the authority of TSTA to make statements in support of Kluck, however, Anderson replied: "The word 'authority' bothers me." Anderson Deposition (Exhibit 1 to Response to TSTA's Motion), at 249.

6. Furthermore, even if Fickman were a TSTA agent, he never requested that Anderson do anything other than write a positive statement about Kluck, and to ask other teachers if they might be interested in doing so. *See* Anderson Deposition, at 175–76, 192–93 (Exhibit 1 to TSTA's Reply). Anderson admitted that Fickman never directed her to spread rumors about Kelly, nor to tell others that Kelly was a drug user or gang member or that his family was "screwed up." *See id.* at 191–92. She could not recall Fickman telling her that Kelly was lying, *see id.* at 201, nor whether Fickman told her that Kelly had recanted his story. *See id.* at 70. Finally, Anderson testified that Fickman never asked her to gather negative information about Kelly, nor can she recall any instances of Fickman ever telling her anything negative about him. *See id.* at 192–93. Thus, even if Plaintiff *had* raised a fact question regarding whether Fickman was a TSTA agent authorizing her to act on behalf of TSTA, Fickman did not expressly authorize the *acts under scrutiny:* Anderson's alleged acts of calling Kelly a drug user and gang member, insinuating that he was a liar, contending that he recanted his allegations, and making generally disparaging remarks about Kelly and his family. *See generally* Complaint, at 5–6.

7. More specifically, ARs are instructed to tell local members: about their legal rights, *see* AR Manual, at 28; that they should consult with an AR or UniServ Representative if they are called into an accusatory proceeding, *see id.;* not to submit any written statements to administrators without AR review, *see id.* at 29; to ensure that they are accompanied to administrators' offices by their AR, *see id.;* and not to agree to any administration proposals without first verifying them with their AR. *See id.*

8. The depositions and affidavits submitted by Plaintiff establish the existence of this more general authority. Anderson testified that her AR responsibilities included advocacy for members, and that it was not unusual for TSTA to be involved when a teacher needed an attorney. *See* Anderson Deposition (Exhibit 1 to Response to TSTA's Motion), at 90. She also testified that an example for the AR "success sheet" would be a positive outcome in a grievance proceeding where an AR had represented a member. *See id.* at 91. Haschke stated that ARs are responsible for soliciting membership in TSTA and are also involved in general organizational activities. *See* Haschke Deposition (Exhibit 2 to Response to TSTA's Motion), at 15. Haschke also testified that TSTA regards ARs as front line people on campus—people to consult when a problem or question arises. *See id.* at 25. Overall, Haschke stated, the AR is a TSTA "advocate" in her building or school. *See id.* at 264. Further, Anderson would be authorized generally by TSTA to show support for a teacher she had recruited when that teacher was accused of misconduct, as part of her larger goal of retaining membership. *See id.* at 179–80. Pondish testified that when she was an AR, she felt authorized to conduct her duties as an AR and stated that one of her roles

Anderson's duties as an AR for TSTA, however, did not encompass assistance to members in their *criminal defense*. As an AR, Anderson knew to refer these situations to paid TSTA staff or the grievance chairperson. *See* Anderson Deposition (Exhibit 1 to TSTA's Reply), at 269. In fact, Anderson was instructed *not* to involve herself in a member's criminal defense matters. She testified in her deposition that she usually referred any serious matters to Pondish or Haschke. *See id.* at 168–70.[9] Pondish also testified that criminal misconduct matters should be referred to TSTA staff. *See* Pondish Deposition (Exhibit 2 to TSTA's Reply), at 153–54. Moreover, the Court is persuaded by TSTA's argument that the AR Manual does not authorize ARs to become involved in criminal defense cases. The manual's emphasis is on recruitment; it speaks to "employment rights" cases; but does not suggest that an AR should be involved in a criminal defense case. *See* AR Manual, at 7–8, 28–30.[10] Finally, although the AR Manual speaks of "front line" advocates, Anderson admitted several times in her deposition that Fickman, not Anderson, was *Kluck's* front line advocate. *See id.* at 172–73, 191.

Anderson was not given express authority to gather information and organize teachers regarding Kluck's criminal case. The Court therefore concludes that Plaintiff has failed to raise an issue of material fact in the face of clear summary judgment evidence that TSTA did not authorize Anderson's involvement in the defense of a member accused of criminal wrongdoing.

■ ***Implied Authority.***—"Implied authority" exists where there is no proof of express authority, but appearances justify a finding that the agent somehow was authorized to act, *i.e.,* there is circumstantial proof of actual authority. *See Pasant,* 52 F.3d at 96 (citations omitted). Under Texas agency law, granting authority to an agent includes the implied authority to do all things proper, usual, and necessary to exercise that authority. *See Sheet Metal Workers Local Union No. 54 v. E.F. Etie Sheet Metal Co.,* 1 F.3d 1464, 1470 (5th Cir.1993); *Spring Garden,* 874 S.W.2d at 948. Implied authority may arise in several ways: from some indication from the principal that its agent has authority; from being the necessary implication of an expressly authorized act, or from a previous course of dealing. *See Pasant,* 52 F.3d at 97.

■ There can be no implied authority in the absence of express authority, because authority is implied to enable the agent to perform the transaction or acts expressly delegated to it by the principal. *See Behring Int'l, Inc. v. Greater Houston Bank,* 662 S.W.2d 642, 649 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd by agr.). Thus, because the Court has found that there was no *express* authority by TSTA for Anderson to participate in the criminal defense of Kluck, there can be no *implied* authority under this theory. Therefore, Plaintiff can establish a fact issue regarding implied authority only if Plaintiff can raise a question of fact regarding whether Anderson's actions were proper, usual, and necessary to carry out her *general* authority to recruit and retain members, and act as advocate for TSTA. Plaintiff has failed to meet this burden.

Plaintiff argues that "it was a proper and usual function of an association and a necessary function of an association representative to provide open public support for one of the members that was having a conflict." Anderson Deposition (Exhibit 1 to Response to TSTA's Motion), at 252; *see id.* at 252; Response to TSTA's Motion, at 11; *see also* Haschke Deposition, at 179–80 (Anderson would be authorized generally by TSTA to

---

as an AR was to be an advocate for TSTA in her school building. *See* Deposition of LaBeth Pondish (Exhibit 4 to Plaintiff's Response to TSTA's Motion) ("Pondish Deposition"), at 90. It was not necessary for her to obtain specific permission from TSTA for everything she did as an AR. *See id.* at 149.

9. For instance, Anderson testified that she was not trained or given information regarding man-

agement of a member's child abuse case. *See* Anderson Deposition (Exhibit 1 to TSTA's Reply, at 169–70).

10. Anderson understood that she was assisting Kluck in a criminal defense matter, not an employment rights case. *See* Anderson Deposition (Exhibit 1 to TSTA's Response), at 261–62, 267, 269.

show support for teacher recruit when teacher was accused of misconduct, as part of her larger goal of retaining membership). Anderson admitted in her deposition, however, that her alleged conduct of spreading rumors, making up lies and humiliating students, was *not* part of the proper, usual, or necessary functions of an AR. *See* Anderson Deposition (Exhibit 1 to TSTA's Response), at 195–96. Nor has Plaintiff raised any fact issues concerning whether there was indication from TSTA that Anderson had authority to commit such acts, whether the acts were a necessary implication of an expressly authorized act, or whether the alleged acts were authorized based upon a previous course of dealing. *See Pasant,* 52 F.3d at 97. To the contrary, none of the TSTA employees who submitted affidavits in this case knew of Anderson's alleged conduct until they were informed of or read of the lawsuit. Furthermore, none of them knew that Anderson had engaged in this type of conduct in the past. *See* Haschke Affidavit, at 2; Affidavit of Bobby Johnson, Field Manager for TSTA (Exhibit 4 to TSTA's Motion), at 2; Ritter Affidavit, at 2; Affidavit of David A. Bongiolatti, Executive Director of TSTA (Exhibit 6 to TSTA's Motion), at 1.

The Court agrees with TSTA that "[w]hen the principal and the purported agent are in agreement that these things would be outside the scope of the purported agency relationship, and not even tangential to the duties of an AR, then Anderson could not be TSTA's agent as a matter of law when she allegedly engaged in these activities." *See* TSTA's Response, at 11. The Court therefore finds that Plaintiff has failed to raise any genuine questions of material fact as to whether Anderson had implied authority from TSTA to engage in the alleged acts as a concomitant of Anderson's general TSTA authority to provide open public support for one of the members having a conflict.

### b. *Apparent Authority*

Even though the Court has found actual authority lacking, Plaintiff's claims against TSTA would nevertheless be viable if Plaintiff were to show that Anderson had apparent authority to engage in her alleged actions.

"Apparent authority is distinguished from actual authority because it is the manifestation of the principal to the third person rather than to the agent that is controlling." *Cactus Pipe,* 756 F.2d at 1111. "To establish apparent authority, one must show that a principal either knowingly permitted an agent to hold itself out as having authority or showed such lack of ordinary care as to clothe the agent with indicia of authority." *NationsBank v. Dilling,* 922 S.W.2d 950, 952–53 (Tex.1996); *see Ames v. Great S. Bank,* 672 S.W.2d 447, 450 (Tex. 1984). Apparent authority is created as to a third person by conduct of the principal that would lead a reasonably prudent person to believe that the principal consents to the act done on his or her behalf by the alleged agent. *See Royal Aviation, Inc. v. Aetna Cas. & Sur. Co.,* 770 F.2d 1298, 1300 (5th Cir.1985); *Biggs v. United States Fire Ins. Co.,* 611 S.W.2d 624, 629 (Tex.1981); *NationsBank,* 922 S.W.2d at 953. In determining whether an agent has apparent authority, a court may consider *only* the conduct of the *principal* leading a third party to believe that the agent has authority. *See NationsBank,* 922 S.W.2d at 953; *Southwest Title Ins. Co. v. Northland Bldg. Corp.,* 552 S.W.2d 425, 428 (Tex.1977). There must be some manifestation—whether act or omission—that causes a third person to believe that the agent is authorized to act for the principal, or a manifestation that the principal should realize would be likely to create such a belief. *See Cactus Pipe,* 756 F.2d at 1111. "A prerequisite to a proper finding of apparent authority is evidence of conduct by the principal *relied upon by the party asserting the estoppel defense* which would lead a reasonably prudent person to believe an agent had authority to so act." *Ames,* 672 S.W.2d at 450 (emphasis added). Apparent authority does not apply where the party alleging the authority has notice of the limitations on the alleged agent's power. *See Douglass v. Panama, Inc.,* 504 S.W.2d 776, 779 (Tex.1974).

In an attempt to construct a chain of apparent authority, Plaintiff sets forth the following argument:

> Given Gerald Haschke's official TSTA letters of support of Kluck to the Superintendent of the La Porte School District, and his statements that the charges against Michael Kluck were "false" and he would be "exonerated," a reasonable person can only conclude that TSTA officially believed Michael Kluck and disbelieved Justin Kelly. Obviously, the charges against Michael Kluck were not false if [Kelly] was telling the truth. Since TSTA's official position was that Kluck was innocent and [Kelly's] accusations were "false," then it is entirely reasonable for the Plaintiff to believe that Kathleen Anderson, the TSTA AR on campus—the front line advocate for TSTA members—was simply following the union's party line in support of Kluck, and disbelief and denigration of the victim.

Response to TSTA's Motion, at 23 (citations omitted). This argument is unavailing.

First, as TSTA points out, Plaintiff incorrectly insinuates that these letters led Anderson to believe that TSTA's official position was that Kelly was a liar. These letters were written, however, in March and April of 1995—more than two months *after* Anderson's alleged actions in this case. *See* Letter from Haschke to Sawyer of 3/22/95 (Exhibit 13 to Haschke Deposition); Letter from Haschke to Sawyer of 4/10/95 (Exhibit 14 to Haschke Deposition); Complaint, at 6.

Second, Plaintiff has not shown that through writing these letters, TSTA knowingly permitted Anderson to hold herself out to Plaintiff as having authority, or showed such a lack of ordinary care as to clothe Anderson with the indicia of authority. *See NationsBank*, 922 S.W.2d at 952–53; *Ames*, 672 S.W.2d at 450. TSTA has established that its employees had no knowledge—constructive or otherwise—of Anderson's alleged activities until after the lawsuit, and Plaintiff

has not contradicted this evidence with any competent summary judgment proof.[11] *See* Haschke Affidavit, at 2; Johnson Affidavit, at 2; Ritter Affidavit, at 2; Bongiolatti Affidavit, at 1.

Finally, Plaintiff has failed to show that TSTA led Kelly or Schrum to believe that Anderson was TSTA's agent. *See Ames*, 672 S.W.2d at 450 (prerequisite to apparent authority is evidence of conduct of the principal relied upon by the party asserting the estoppel defense). As already noted, various TSTA affiants stated that they did not know Kelly, never conducted meetings regarding Kluck, and never formulated strategies to defend Kluck. *See* Haschke Affidavit, at 1–2; Johnson Affidavit, at 1–2; Ritter Affidavit, at 1–2; Bongiolatti Affidavit, at 1–2. Schrum has never met Anderson, nor has she had any conversations with anyone claiming to be a representative of TSTA. *See* Deposition of Kimberly Schrum (Exhibit 5 to TSTA's Reply), at 274–75. Further, no one from TSTA ever made representations to Kelly. *See* Deposition of Justin Kelly (Exhibit 6 to TSTA's Reply), at 203. Even if Plaintiff had raised a fact issue regarding whether Schrum or Kelly relied on some act or omission of TSTA, the Court finds that a reasonably prudent person would not have concluded that TSTA consented to Anderson's alleged acts merely on the basis of the attenuated theory regarding Haschke's letter, without more. *See Royal Aviation*, 770 F.2d at 1300; *NationsBank*, 922 S.W.2d at 953; *Biggs*, 611 S.W.2d at 629.

Therefore, for the forgoing reasons, the Court concludes that Plaintiff has failed to raise a genuine question of material fact regarding whether Anderson had apparent authority to engage in the conduct alleged by Plaintiff.

### c. *Ratification*

 The absence of actual and apparent authority notwithstanding, a principal is

---

11. Plaintiff's argument that "there were at least two other TSTA agents—LaBeth Pondish and Robert Fickman—who both knew that Justin Kelly was the alleged victim of Kluck's sexual assaults, and who were in a position to know, to a large extent did know, and could have controlled Kathleen Anderson's conduct with regard to supporting Michael Kluck," is meritless. Plaintiff's Response to TSTA's Motion, at 22–23. Plaintiff has set forth no summary judgment evidence proving that any knowledge or conduct of Pondish or Fickman could somehow be imputed to TSTA.

vicariously liable when it ratifies the acts of a purported agent. *See Spring Garden,* 874 S.W.2d at 948. TSTA argues that there is no evidence proving that TSTA ratified Anderson's actions because TSTA did not know of Anderson's actions until the lawsuit was filed. *See* TSTA's Reply, at 15; Haschke Affidavit, at 2; Johnson Affidavit, at 2; Ritter Affidavit, at 2; Bongiolatti Affidavit, at 1. Plaintiff has not addressed this argument; nor is the Court aware of competent summary judgment evidence on which Plaintiff could rely to rebut TSTA's ratification argument. The Court consequently finds that no material fact question has been established regarding ratification by TSTA.

Because the Court concludes that Plaintiff has failed to raise genuine questions of material fact regarding the issues of actual authority, apparent authority, and ratification, Plaintiff's claims against TSTA based upon agency theory fail as a matter of law.[12]

### B. *Claims Against Land and Anderson Individually*

█ Plaintiff asserts claims of slander, intentional infliction of emotional distress, and invasion of privacy against Defendants Land and Anderson. *See* Complaint, at 7–11. Land and Anderson have moved for summary judgment on various grounds. Land and Anderson contend that as professionals in education they are entitled to qualified immunity under Texas law on all Plaintiff's common law claims.[13] They also assert in defense of Plaintiff's slander claim the doctrines of qualified immunity arising from the "duty to disclose" doctrine and freedom of speech to express opinions. Finally, Land and Anderson argue that there is a defect in Plaintiff's invasion of privacy claim.[14]

No issues remain in this case over which the Court has original jurisdiction. The claims remaining against Land and Anderson raise intricate fact issues that have not been adequately addressed by the parties. More-over, the Court discerns potentially novel questions of state law. These matters are best addressed by the state courts. The Court therefore declines to exercise supplemental jurisdiction over the state law claims remaining against Defendants Land and Anderson. *See* 28 U.S.C. § 1367(c)(1994). Instead, the Court exercises its discretion to remand these causes of action to state district court. *See* 28 U.S.C. § 1441(c)(1994).

### IV. *CONCLUSION*

For the reasons stated above, the Court concludes that TSTA's Motion for Summary Judgment is meritorious and declines to reach the issues raised by Defendants Land and Anderson individually. It is therefore

**ORDERED** that TSTA's Motion for Summary Judgment [Doc. # 22] is **GRANTED.** It is further

**ORDERED** that Defendants Land and Anderson's Motion for Summary Judgment [Doc. # 61] is **DENIED without prejudice.** It is further

**ORDERED** that Plaintiff's claims against Land and Anderson, individually, are **REMANDED** to the 165th Judicial District of Harris County, Texas.

---

12. Because the Court finds that no fact issues exist regarding actual authority, apparent authority, and ratification, the Court need not decide the issues of "scope" and "control" as briefed by the parties.

13. *See* TEX.EDUC CODE ANN. § 22.051 (Vernon 1996).

14. They do not raise any specific issues regarding Plaintiff's intentional infliction claim. *See* Land/Anderson Motion, at 4–5.